LEE A. SNYDER, Appellant, v. A. E. ABEL et ux., Appellees.

No. 46639.

FEBRUARY 6, 1945.

Frank P. Brennan, of Avoca, and White & White, of Harlan, for appellant.

Hines & Higgins, of Harlan, for appellees.

MILLER, J.— On December 28, 1943, plaintiff, a resident of Nebraska, filed his petition herein, Count I of which asserted: Plaintiff is the owner of a farm in Shelby County, Iowa, comprising three hundred seventy acres; on November 25, 1942, he entered into a written lease of said farm with defendants, husband and wife, for cash rent of $2,960, payable $1,460 on August 1, 1943, and $1,500 on December 25, 1943; on October 29, 1943, plaintiff and George B. Neff went to the farm; plaintiff told Mr. Abel that the rent was inadequate and that defendants would have to sign a new lease on a crop-share basis or for an increased cash rent for the following year; Abel replied that he would not pay an increased rent, that other farms in the vicinity rented for less than he was paying, and, if plaintiff increased the rent for 1944, he would quit or get another farm; thereafter, Abel contacted several real-estate agents to purchase or rent another farm for 1944; Abel acted as agent for his wife; plaintiff rented the farm to one Triplett for the year commencing March 1, 1944; Abel has publicly

stated that he will not vacate the farm on March 1, 1944; defendants are estopped from claiming any right to occupy the farm and are estopped from claiming any right under section 10161, Code, 1939. The prayer was that title to the farm be quieted in plaintiff as against any interests of defendants, and that a writ of possession issue directing the sheriff to put plaintiff in possession of the farm.

Count II of the petition repeated the general allegations of Count I, and asserted: On October 29, 1943, George B. Neff, on behalf of plaintiff, served a notice of the termination of the farm tenancy and a demand for possession of the farm, in accordance with section 10161, Code, 1939; the notice was served on Abel personally and was served on Mrs. Abel by serving same, at her usual place of abode, upon Mr. Abel; thereafter, defendant Abel publicly stated that he did not expect to vacate the farm on March 1, 1944, but intended to remain on the farm under the same provisions as those contained in his current lease. The prayer was the same as in Count I.

Count III of the petition incorporated therein the allegations of Count I, and asserted: On October 29, 1943, plaintiff handed Abel the notice of termination of farm tenancy and the demand for possession, which was read by Abel and handed back to plaintiff; Abel represented his wife as her agent; Abel's statement that he would not enter into a new lease at an increased rent or upon a share basis, together with delivery to him of the notice, amounted to a termination of the lease and constituted a waiver by both defendants of any notice under section 10161, Code, 1939. The prayer was the same as in Count I.

Various motions were filed. The rulings thereon are not material to the issues presented here. Defendants' answer admitted certain allegations of each count of the petition and denied others. The answer admitted that plaintiff owned the farm and that defendants were tenants under the written lease set forth in the petition. Defendants specifically denied those allegations of Count I of the petition which were asserted as grounds for estoppel, those of Count II, which were asserted as grounds for the claim that a notice under section 10161, Code, 1939, had been served on defendants, those of Count III,

which were asserted as grounds for the claim that the lease had been terminated or that there was a waiver of service of notice under section 10161.

Plaintiff testified that on October 29, 1943, he went to George Neff's real-estate office and had Neff make out a notice to be served on Abel; he and Neff went to the farm; plaintiff shook hands with Abel out in the field and "told him that according to the Iowa law, that he had a notice made out to serve so we wouldn't have any argument about the rent for another year * * * he would have to serve Abel a notice or else he could keep the farm at the same rent"; plaintiff handed the notice to Abel, who took it, read it, and said that if he was talking about more rent, he could quit talking as he would not pay more, would quit; plaintiff said, "all right, that is final"; Abel handed the notice to plaintiff; plaintiff handed it back to Abel and told him there was a place for him to sign; Abel handed it back, said he was not going to sign it, "that he wasn't that kind of a blank and used a cuss word"; plaintiff got in the car with Neff and handed the notice to Neff; Abel wanted to know what plaintiff thought the farm was worth; plaintiff said it ought to be worth $10 per acre; Abel said that was too high, that better farms than plaintiff's were renting for $1 less than Abel was paying; plaintiff told Abel he need not decide that day on that $10, but he could have a few days to think over the matter; plaintiff saw Neff offer the notice to Abel and Abel refused to accept it; Mrs. Abel was not present in the field on that day.

On cross-examination plaintiff testified that defendants were on the farm when plaintiff acquired it; in January 1941, he rented the farm to them for $2,220 cash rent; in the middle of February 1942, he rented it to them for $2,590 cash rent; on November 25, 1942, he rented it to them for $2,960 cash rent; he had never attempted to serve a notice on Abel before 1943, and Abel had given him an increase in rent each year; plaintiff signed a lease with Tom Triplett for 1944 for cash rent of $3,000.

W. R. Remein testified that Abel bid on a farm north of Marne, Iowa, but the farm was rented for 1944, so that, had Abel bought it, he would not get possession until 1945.

George B. Neff testified that on October 29, 1943, he prepared the notice, exhibit 4, addressed to Earl Abel and wife,

notifying them that under section 10161 of the Code of Iowa their tenancy would terminate March 1, 1944; he went to the farm with plaintiff; they located Abel in the field; plaintiff handed the notice to Abel, who read it and handed it back; plaintiff said that he wanted more rent; Abel said that he would not pay it, he would quit or get another place; Abel refused to sign the notice; plaintiff handed the notice to Neff; he asked Abel if he wanted a copy; Abel said he did not want "the damn thing"; Neff did not hold it out to Abel, just held it up; plaintiff said he wanted $10 per acre rent; Abel said he would not pay it, he could rent other farms cheaper in the community; the kind and condition of other farms was discussed; plaintiff told Abel he could have a few days to think it over; shortly thereafter, plaintiff and Neff left the farm; after that day Neff showed Abel several farms.

N. C. Peterson testified that he is engaged in selling real estate; at Abel's request he corresponded with plaintiff to see at what price plaintiff wanted to sell the farm. The only farm Peterson showed Abel was rented for 1944. William J. Nilan testified concerning conversations with Abel regarding the same real-estate transaction, in one of which Abel said that if he got the farm, plaintiff could "stick his farm some place."

There was other evidence offered by plaintiff but the foregoing gives the high lights of it. Defendants' testimony was in sharp conflict on certain phases but it need not be set forth here. On January 26, 1944, the court entered a decree, finding that the evidence was insufficient to show that a notice of termination of the lease had been served on either defendant and dismissing the action. On February 9, 1944, plaintiff perfected his appeal to this court.

I. The first question is whether the requirements of section 10161 had been complied with. The court held that they had not. The court was right in so holding.

Section 10161 requires a landlord of a farm to serve on his tenant not later than November 1st written notice of termination of the tenancy, whereupon it shall terminate March 1st following; otherwise, it shall continue for the following crop year on the same terms and conditions as the original lease. Section 10162, as amended by chapter 255, Acts of the Fiftieth

General Assembly, provides three methods of serving such notice. It is conceded that the only method therein provided for which plaintiff attempted to utilize was the second, "in the same manner as original notices are served." This requires interpretation of Rules 52 and 56 of the Rules of Civil Procedure, which have superseded sections 11058 and 11060, Code, 1939.

Paragraph 1 of said section 11060 had provided that personal service be made:

"1. By reading it to the defendant or offering to do so in case he neglects or refuses to hear it read, and in either case by delivering him personally a copy thereof, or, if he refuses to receive it, offering to do so."

Rule 56 now provides:

"Original notices are 'served' by delivering a copy to the proper person."

Accordingly, reading of the notice or offering to do so is now dispensed with and the copy of the notice must be delivered; merely offering to deliver it will not suffice. Cook, Iowa Rules of Civil Procedure, 153. Without undertaking to define what would constitute delivery of a copy of a notice in a particular case, we are satisfied that Neff did not deliver a copy of the notice to Abel under the record herein.

Rule 52 provides:

"Original notices may be served by any person who is neither a party nor the attorney for a party to the action."

It is conceded that this rule disqualifies plaintiff from serving the notice herein. The only contention is that Neff served the notice for plaintiff.

Plaintiff's evidence of what Neff did was intended to establish that the requirements of section 11060, above quoted, were met. But it would be necessary to go further and hold that Rule 56 should be interpreted as section 11060 formerly read before there would be any basis for holding that Neff served the notice herein on Abel. As above stated, we hold that the law has been changed. Neff's actions were wholly insuffi-

cient to constitute delivery of the notice to Abel. The notice was not legally served on him.

As to Mrs. Abel, it is contended that there was substituted service on her through serving her husband. But such substituted service, under paragraph (a) of Rule 56, would require delivery of the notice to Abel. Accordingly, neither defendant was legally served with the notice required by section 10161. The court was right in so holding.

II. This brings us to the final question: whether there was a voluntary termination of the lease or acts sufficient to constitute a waiver or estoppel. On this issue there is a very sharp dispute in the testimony. According to defendants' testimony there was no conduct on the part of Abel which would support plaintiff's claim. But there is an additional factor. Plaintiff recognized that, if there was a voluntary termination, or acts which amounted to waiver or estoppel, it was necessary that both defendants be bound thereby. Plaintiff alleged that both were bound because Abel acted as agent for his wife. But plaintiff failed to prove such agency. Mrs. Abel was in the house at the time plaintiff and Neff called on her husband. The evidence is undisputed that she was not contacted. Nor is there any evidence that her husband was authorized to act as her agent or that she ratified any of the actions which plaintiff would attribute to him.

The facts that defendants were husband and wife and joint tenants did not constitute Abel the agent of his wife. Chamberlain v. Brown, 141 Iowa 540, 552, 120 N. W. 334. It was necessary that plaintiff prove that an agency did exist. Strohmeier v. Anderson, 195 Iowa 828, 830, 192 N. W. 811. The proof was wholly lacking. Accordingly, the provisions of section 10161 were not obviated and, not being complied with, plaintiff's action was properly dismissed.

Since the question is not raised we do not pass upon the propriety of an action to quiet title against a claimed right to possession to begin in the future.

The decree is—Affirmed.

All JUSTICES concur.