**Thomas Guy STOOKEY, Appellee,**

v.

**Nancy Louise STOOKEY, Appellant.**

No. 2–57662.

Supreme Court of Iowa.

May 21, 1975.

Swift, Brown & Winick, Gary S. Gill, and Richard L. Krause, Des Moines, for appellant.

Irish, Skinner & Wieslander, Altoona, for appellee.

■

UHLENHOPP, Justice.

The principal question in this appeal is whether the trial court was right in changing custody of a child of divorced parents from the mother to the father.

Thomas Guy Stookey and Nancy Louise Badger married on June 22, 1968, and lived together for about six months in Des Moines, Iowa. In January 1969, Nancy commenced a divorce action, and in February of that year Thomas entered the armed forces and thereafter served overseas. In due course Nancy got a divorce.

On August 20, 1969, Nichole Christina Stookey was born of this marriage. Nichole lived with Nancy's parents, the Badgers, from her birth until February 9, 1972. During part of that time Nancy lived with the Badgers, part of the time with a woman friend, and part of the time with one Mark Allen. She worked at various jobs. Nichole received good care from the Badgers.

On February 9, 1972, Nancy married Mark Allen and, taking Nichole, moved with Allen to Duluth, Minnesota. On May 13, 1972, a son, James Warren Allen II, was born to Nancy and Mark. That stormy marriage involved drugs, quarrels, violence, and suicide threats. Twice during 1972 Nancy sent Nichole to live with relatives in Iowa for periods of time.

Eventually Allen took the son James to Connecticut. In January 1973, Nancy placed Nichole with Cynthia and Kenneth Jones in Indianola, Iowa—Nancy's sister and brother-in-law. Nichole stayed there until January 1974, receiving good care from those relatives.

The transcript of testimony is replete with Nancy's comings and goings, sometimes with Nichole and sometimes without her.

Thomas Stookey, having been discharged by the armed forces, resumed his employment at a Hinky Dinky store in Des Moines. At the time of the trial of the present case he was assistant produce manager there, taking management training.

On July 26, 1973, Thomas remarried. His second wife, Sally Ann, has a high school diploma and one year of college training. Her testimony reveals her to be an intelligent and understanding person.

In January 1974, Nancy went to Connecticut with relatives and engaged in litigation with Mark Allen over custody of James. The Connecticut court awarded James' custody to Allen's mother. Nancy returned to Iowa.

At about this time Thomas concluded that something had to be done about permanent custody of Nichole. He and Sally Ann desire to provide Nichole a permanent home.

Near midnight on March 6, 1974, Nancy took Nichole to a bus station in Des Moines, intending to go to Allen in Connecticut, to whom Nancy was still married. Thomas found out about the move and took physical possession of Nichole, to prevent Nancy's returning the child to the Mark and Nancy Allen environment.

The next day Thomas filed a motion to modify the original divorce decree, asking the court to grant him permanent custody of Nichole with temporary custody pending trial, as well as such other and further relief as equitable. The trial court subsequently placed Nichole in the temporary custody of the Joneses pending trial. Later the parties tried the modification issues extensively.

I. The basic issues which confronted the trial court were whether an uncontemplated material change of circumstances had occurred since the original decree and what permanent custodial arrangement of Nichole would best serve her long-range interests. Crary v. Curtis, 199 N.W.2d 319 (Iowa). The trial court resolved these issues in favor of Thomas, giving Nancy visitation rights. We review the case de novo although we give weight to the trial court's findings. Zaerr v. Zaerr, 222 N.W.2d 476 (Iowa).

We think the evidence abundantly demonstrates a material, uncontemplated change of circumstances occurred and Nichole's best interests dictate that Thomas should have permanent custody. The child has been bandied about too long. Thomas and his present wife appear to have a stable relationship and home and to offer the best hope for Nichole over the long pull. Indeed, we doubt that Nancy would be second best, compared to Joneses or Badgers. We believe the trial court's decree was right as to permanent custody and visitation.

II. Nancy contends that the trial court should have sustained her motion to strike certain evidence. The question of admissi-

bility is not controlling, however, as we arrive at the same result on the merits of the appeal with or without that evidence, under our de novo review. City of Emmetsburg v. Central Iowa Tel. Co., 250 Iowa 768, 96 N.W.2d 445. Nancy also urges that Thomas's objections to certain of her questions of a witness should not have been sustained, but she made no offer of proof and we do not know what the witness would have said. Amsden v. Grinnell Mut. Reinsurance Co., 203 N.W.2d 252 (Iowa). She also asserts that the trial court permitted certain leading questions, but she did not make a record for review. In any event, deletion of the answers to those questions would not change the result.

III. Nancy objects to the requirements in the modification decree that she pay child support. She contends and we agree that this issue was not actually tried. We therefore reverse as to this issue and remand for a hearing on the question of the child support, if any, to be paid by Nancy.

Appeal costs one-half to appellant and one-half to appellee.

Affirmed in part, reversed in part and remanded.