Dale DAVIDSON, Appellee,

v.

Jeanette VAN LENGEN, Appellant.

No. 60120.

Supreme Court of Iowa.

May 17, 1978.

K. L. Kober, of Pickett & Kober, Waterloo, for appellant.

James W. Coddington, of Coddington & Kemming, of Waverly, for appellee.

MOORE, Chief Justice.

Defendant appeals from declaratory judgment holding she is estopped to demand child support payments from her former husband. We affirm.

The parties were married in January 1951 and divorced in January 1956. They had one son, Michael Anthony, born October 17, 1951. Their divorce decree provided, inter alia, that custody of Michael was awarded to his mother (defendant, now Jeanette Van Lengen) with reasonable rights of visitation granted to his father (plaintiff Dale Davidson). Plaintiff was ordered to pay child support in the amount of $10 per week in semi-monthly installments until Michael reached the age of 18.

Initially Dale fulfilled his support obligations although he experienced difficulties in attempting to visit Michael. It is undisputed no payments were made after March 26, 1957.

At the time of the divorce Dale did not own property. He subsequently acquired two parcels of real estate. One parcel was acquired in 1976 for $50,000 and at time of trial was subject to an $18,000 mortgage. The other was sold in 1976 for $33,000. When he attempted to convey the latter parcel, the prospective buyers refused to complete performance of the purchase contract until an apparent lien for the back child support was either shown as satisfied or otherwise removed of record. On June 8, 1976 Dale filed the present action for declaratory judgment claiming Jeanette was equitably estopped from enforcing the back due support because of her near 20-year acquiescence in a quid pro quo, whereby he ceased visitation and she agreed not to enforce the support obligation. Jeanette answered alleging there was no such agreement and she had never acquiesced in the nonpayment. Pending disposition of the controversy, $7000, which represented the alleged lien, was placed in escrow.

With the issues thus joined the case proceeded to trial. After the certified record of support payments was received into evidence, Dale testified in his own behalf. He explained that shortly after the divorce was finalized he was "denied" all of his visitation rights. Additionally, Jeanette in the summer of 1956 expressly told him: "She wished I would not come down to see Michael, and I could stop support payments if I so liked." Although he then followed her wishes, later some partial payments were made. However, all child support payments were stopped in March 1957 after a "mutual understanding" was reached with Jeanette and her second husband, John A. Van Lengen. Over defendant's hearsay objection, Dale stated he was contacted by Mr. Van Lengen who pointedly told him to discontinue any further visitations:

"Basically he told me what his intentions were, that they would support Michael and I was not to bother with the support payments and I was not to visit him any more."

Thereafter Dale said he ceased making all payments.

Jeanette denied there was ever any "agreement" and testified she saw her lawyer, Everett A. Scott (now an Associate District Court Judge) every year until 1967 on numerous legal matters (primarily tax returns) and requested his assistance in collecting the back due child support. How-

ever, she conceded no court action was ever initiated to secure the money then owing. A judge since 1967, Scott corroborated this phase of her testimony stating no action was ever taken other than possibly a letter or phone call. He was not certain he had ever done either. He explained he had generally declined to undertake collection on cases which he had not handled from their inception.

After both sides had rested, defendant moved to reopen the case in order to obtain the testimony of her present husband who had not previously been called as a defense witness. She alleged she had been surprised by Dale's hearsay testimony regarding her husband's alleged statement. This motion was overruled on the basis defendant had been given adequate opportunity to call Mr. Van Lengen as a witness during trial.

On September 30, 1976, the court filed findings of facts, conclusions of law and judgment for plaintiff. The findings of fact were substantially the same as our statement of facts, supra. The court's conclusions of law were based on the legal principles set out in *Anthony v. Anthony,* Iowa, 204 N.W.2d 829 and *Cullinan v. Cullinan,* Iowa, 226 N.W.2d 33. The court concluded:

> "Plaintiff relied on the acquiescence by Defendant in his failure to make child support payments, and the Defendant is equitably estopped from enforcement of the child support judgment."

On October 11, 1976 defendant filed a motion to reconsider and vacate the judgment. It was argued and submitted to the court within a few days.

On October 28, 1976 the court filed a detailed ruling on defendant's motion. The court noted the affidavit of Mr. Van Lengen, denying plaintiff's testimony, offered no help as the court's judgment was founded on the doctrine of equitable estoppel by acquiescence.

I. The legal or equitable nature of an action for declaratory judgment turns on the nature of the case as well as the relief sought. *Northern Natural Gas Company v. Forst,* Iowa, 205 N.W.2d 692, 694. Where, as here, the action was tried below as an equitable proceeding, our review is de novo. *Denning v. Denning,* Iowa, 185 N.W.2d 238, 240. We give weight to fact findings of the trial court but are not bound by them. Rule 14(f)(7), Rules of Appellate Procedure.

II. Defendant first contends trial court erred in holding the doctrine of estoppel by acquiescence applied to bar her claim for past due child support. She specifically alleges the court erroneously found plaintiff was materially prejudiced by delay in asserting her rights and improperly inferred estoppel from the mere passage of time.

The doctrine is applicable where a person knows or ought to know that she is entitled to enforce her right or to impeach a transaction and neglects to do so for such a time as would imply that she intended to waive or abandon her right. *Anthony v. Anthony,* Iowa, 204 N.W.2d 829, 834 and citations.

Previously we have considered the doctrine and held it may be interposed in a proper case where a former spouse has failed to timely pursue her claim for enforcement of a child support judgment. *Cullinan v. Cullinan,* Iowa, 226 N.W.2d 33, 36; *Anthony v. Anthony,* supra. Other states are in accord. Cf. *Sonenfeld v. Sonenfeld,* 331 Mich. 60, 49 N.W.2d 60.

In *Anthony v. Anthony,* supra, we expressly found a parental bargain such as the one herein alleged, whereby a waiver of decretory child support was exchanged for a surrender of visitation rights, to be void as contrary to public policy because it made the best interest of the child subservient to parental self-interest. Nevertheless, we held that the wife's long failure to exercise her right to collect back child support and her former husband's reliance thereon equitably estopped her from enforcing the judgment. We stated at page 834, 204 N.W.2d:

> "Plaintiff knew of her right to child support for the 17 years she failed to pursue it. She led defendant to believe she intended to waive or abandon it. It

is obvious defendant relied on this acquiescence. Plaintiff is equitably estopped from enforcement of the child support judgment."

Two years later we decided the case of *Cullinan v. Cullinan,* supra. There we considered the requisites for raising claims of laches and estoppel by acquiescence and held under the record the father was not entitled to relief because of a failure to prove he was "materially prejudiced" by his former spouse's delay in asserting her rights. Additionally, we said prejudice could not be inferred merely from the passage of time.

On first blush it would appear that *Anthony* and *Cullinan* are somewhat inconsistent and that the latter opinion limits application of the former; however, this is not the case. *Anthony* did not recite material prejudice as a requirement of estoppel by acquiescence. This is hardly surprising because while prejudice is generally included as an element of laches, *Lovlie v. Plumb,* Iowa, 250 N.W.2d 56, 63; *Chadek v. Alberhasky,* 253 Iowa 32, 40, 111 N.W.2d 297, 301, prejudice is not discussed in acquiescence cases. See *Olson v. Clark,* 252 Iowa 1133, 1138, 109 N.W.2d 441, 444; *Carlson v. Smith,* 213 Iowa 231, 237, 236 N.W. 387, 389. It is thus clear our discussion of material prejudice in *Cullinan* was directed at the laches claim. The acquiescence claim there was rejected because the facts showed the mother had attempted to enforce her claim. (At one point defendant-father had been cited for and later found to be in contempt for nonpayment.)

The distinction between estoppel by acquiescence and laches is reasonable when considered in light of the different focuses· of, and different policies served by, the two concepts. Estoppel by acquiescence is based on an examination of the individual's actions who holds the right in order to determine whether that right has been waived. It advances a policy of stability and conclusiveness. See Douthwaite, Attorney's Guide To Restitution, § 9.3 at 375; Dobbs, Handbook on the Law of Remedies, § 2.3 at 43. The application of laches re-

quires focusing on the defendant's position and determining whether the delay harmed him or resulted in material prejudice. Douthwaite, supra, at 378–379. The doctrine is a purely equitable one and applies where there has been an unreasonable delay in asserting a remedy and is clearly demanded in the interests of justice. *Davenport Hosp. Assn. v. Hospital Service,* 261 Iowa 247, 261, 154 N.W.2d 153, 162. The basis of the doctrine is that public policy seeks to discourage stale claims. *Thodos v. Shirk,* 248 Iowa 172, 185, 79 N.W.2d 733, 741. Each case is governed chiefly by its own circumstances. *Shives v. Niewoehner,* Iowa, 191 N.W.2d 633, 637.

Trial court held under the facts the doctrine of "estoppel by acquiescence" applied to bar defendant's claim. We agree. We believe the case clearly is governed by our prior decision in *Anthony v. Anthony,* supra. Contrary to *Cullinan v. Cullinan,* supra, there is no indication defendant ever initiated court action to compel payment. Defendant is equitably estopped from enforcement of the child support which to trial time she never attempted to actively enforce. The parties at all times lived in the Waterloo-Cedar Falls area. Plaintiff and Mr. Van Lengen were fellow employees at Rath Packing Company from 1953 to 1963.

■ III. Defendant next contends the trial court was without power to bar her from attempting to enforce a statutory judgment lien (Code section 624.23) on real estate owned by plaintiff. Because this issue was never presented to the trial court we need not consider it. *Schnabel v. Display Sign Service, Inc.,* Iowa, 219 N.W.2d 546, 548.

■ IV. At trial, the court permitted plaintiff to testify over defendant's hearsay objection that Mr. Van Lengen told him not to bother with the support and not to visit Michael. Rather than ruling on the objection, the trial court should have received the evidence subject to the objection. *Stookey v. Stookey,* Iowa, 229 N.W.2d 256, 257–258. However, this is not controlling as we arrive at the same result on the merits of

the appeal with or without that evidence under our de novo review. We have disregarded it. *In Re Scarlett,* Iowa, 231 N.W.2d 8, 10.

V. Finally, defendant argues the trial court committed reversible error in overruling her motion to reopen after both parties had rested. She sought to call Mr. Van Lengen (her husband since 1957) to rebut plaintiff's hearsay evidence.

We have repeatedly stated the trial court enjoys a wide discretion in reopening a case for reception of additional testimony. *Anderson v. City of Council Bluffs,* Iowa, 195 N.W.2d 373, 376 and citations. We do not believe the trial court abused that discretion. However, assuming arguendo there was an abuse of discretion, it would not be reversible in view of our holding in Division IV, supra.

VI. Child welfare is not here involved. Michael became 18 on October 17, 1969. This action, filed June 8, 1976, is limited to the question of whether defendant is barred under the doctrine of equitable estoppel by acquiescence from enforcement of the child support judgment. Our de novo review causes us to agree with the trial court that she is so estopped.

Defendant knew of her right to child support for the more than 19 years she failed to pursue it. By words and actions she led plaintiff to believe she intended to waive and abandon her right. Obviously plaintiff relied on this acquiescence. As requested by defendant he ceased child visitations which he had previously exercised. Thereafter he remarried and became the father of four children and eventually took title to the real estate here involved.

The trial court's declaratory judgment was correct and is affirmed.

AFFIRMED.

MASON, RAWLINGS, LeGRAND and REES, JJ., concur.

REYNOLDSON, UHLENHOPP, HARRIS and McCORMICK, JJ., dissent.

REYNOLDSON, Justice (dissenting).

Having reached a different view of the facts and applicable law, I respectfully dissent.

I. While the majority cites and apparently relies on our rule we give weight to fact-findings of trial court but are not bound by them, rule 14(f)(7), Rules of Appellate Procedure, the first prong of the rule is of questionable applicability in this case. Trial court's concept of the facts seems to have been derived initially from an "Informal Trial Brief" filed by plaintiff. Thereafter, the court occasionally took the position only legal and not factual issues were involved.

As defense counsel sought to cross-examine plaintiff the following colloquy occurred:

"THE COURT: Mr. Kober, I don't want to limit your cross-examination, but I said at the outset of this hearing I thought this was strictly a legal argument. You are trying to make it into a jury case, and I don't know where you are headed. * * *"

At a later point the court observed to defense counsel, "I think the Court has to decide this as a legal argument rather than a fact question. You are just opening up a can of worms as far as I'm concerned."

Nonetheless, trial court's finding of facts included the finding plaintiff "was told in forceful terms by Mr. Van Lengen that they wanted no part of his visits in the future, and that they did not expect any support and they would support Michael." The court further found plaintiff relied on "the representations of the Defendant and her later acquired spouse."

On direct examination plaintiff was asked what Mr. Van Lengen said to him. When defense counsel objected on hearsay grounds the court ruled:

"THE COURT: If he was her husband, Mr. Kober, he apparently was acting as her agent, and by and for her. I am going to let that in. Ordinarily the Court doesn't care much about hearsay, but if this man was her husband, he was acting for her. I am going to let it go in.

"MR. KOBER [defense counsel]: May it please the Court, not certain here, he may not have been her husband at that time and place—

\* \* \* \* \* \*

"THE COURT: He eventually did become her husband, didn't he?

"MR. KOBER: He wasn't at the time. He couldn't have been an agent.

"THE COURT: You are arguing over semantics, Mr. Kober. He may go ahead and answer."

As the majority opinion indicates, Mr. Van Lengen was not in attendance at trial. There is no indication in the record defendant had any forewarning alleged statements of Mr. Van Lengen not made in defendant's presence would be injected into plaintiff's case. When defendant sought to deny Van Lengen had made the statements attributed to him, the court objected, "Wait a minute. Now you are not—you are going—saying what somebody else said. You don't know whether John [Van Lengen] told him that; you weren't there, were you?"

Of course, married women in Iowa have had the same right as husbands to manage their own property for at least 100 years. See § 597.1, The Code, 1977; § 2202, The Code, 1873; Note, 25 Iowa L.Rev. 351, 353–354 (1940). Marriage does not install a husband as agent to bargain away his wife's property. *Snyder v. Abel*, 235 Iowa 724, 730, 17 N.W.2d 401, 404 (1945); *Fulton Bank v. Mathers*, 183 Iowa 226, 230–231, 166 N.W. 1050, 1051 (1918). Equally ineffective for this purpose is a pending marriage, as in this case.

Our de novo review in this equity matter should proceed without attributing weight to the findings below.

II. Plaintiff's action is based solely on the pleaded theory "[t]hat Defendant is equitably estopped from enforcement of said judgment for support \* \* \*." Plaintiff further affirmatively pleaded "[t]hat the child support provision set forth in said Decree constitutes a judgment against Plaintiff, and apparently creates a lien encumbering said real estate \* \* \*."

As plaintiff relies on equitable estoppel, certain rules apply.

Equitable estoppel is applied to prevent fraud and injustice and exists wherever a party cannot in good conscience gainsay his or her own acts or assertions. *Dart v. Thompson*, 261 Iowa 237, 243, 154 N.W.2d 82, 86 (1967). The doctrine is applied where, because of something a party has done or omitted to do, he or she is denied the right to plead or prove an otherwise important fact. *Anfenson v. Banks*, 180 Iowa 1066, 1092–1094, 163 N.W. 608, 616 (1917). The rule functions to prevent fraud, actual or constructive. *Id.*

Equitable estoppel always operates as a shield, never as a sword. D. Dobbs, Remedies, § 2.3 at 42 (1973); 28 Am.Jur.2d, Estoppel and Waiver, § 33, p. 637 (1966). The burden to prove estoppel is on the party asserting it. Each element must be proved clearly, convincingly and satisfactorily. *Colthurst v. Colthurst*, 265 N.W.2d 590, 598 (Iowa 1978); *Pillsbury Co. v. Ward*, 250 N.W.2d 35, 39 (Iowa 1977); *Manson State Bank v. Diamond*, 227 N.W.2d 195, 201 (Iowa 1975); *Davenport Osteopathic Hosp. Ass'n v. Hospital Serv.*, 261 Iowa 247, 256–257, 154 N.W.2d 153, 159 (1967); *Smith v. Coutant*, 232 Iowa 887, 890–893, 6 N.W. 2d 421, 424–425 (1942).

Here the doctrine is asserted affirmatively to strip defendant of installment judgments which are alleged to be valid and constitute a lien on plaintiff's real estate. In this connection it should be noted equitable estoppel by acquiescence historically evolved to deprive a party from obtaining distinctive equitable remedies to which he or she would otherwise be entitled, not to cut off remedies at law or statutory rights. J. Pomeroy, Equity Jurisprudence, § 817, pp. 245–246 (Symons 5th ed. 1941); see *Thodos v. Shirk*, 248 Iowa 172, 185–187, 79 N.W.2d 733, 740–741 (1956); cf. *Smith v. City of Jefferson*, 161 Iowa 245, 249, 142 N.W. 220, 221–222 (1913).

It also should be observed plaintiff is not relying on the statute of limitations, which is nowhere asserted in this case. We said in

*Cullinan v. Cullinan,* 226 N.W.2d 33, 35 (Iowa 1975), "[e]ach installment is in itself a judgment as it becomes due. The principle is now codified in § 598.22, The Code." The statute apparently runs from the time each installment falls due. See *Bennett v. Tomlinson,* 206 Iowa 1075, 1079, 221 N.W. 837, 840 (1928); Annot., *Alimony or Support Order—Action—Time,* 70 A.L.R.2d 1250, § 4(b), pp. 1258–1262 (1960). Certainly installments not due were uncollectable. Future installments were subject to modification at any time. It seems illogical, then, to speak of defendant's delay in collection proceedings in terms of a time period originating with the dissolution decree. If defendant slept on her rights the date of each installment should be fixed as the date upon which the slumber commenced. Cf. *Smith v. Smith,* 168 Ohio St. 447, 451, 156 N.E.2d 113, 117 (1959).

The majority opinion first intimates that an "estoppel by acquiescence" resulted in a "waiver" and therefore, unlike the laches doctrine, does not require a determination whether the person asserting it was harmed or materially prejudiced. At a later point in the opinion the majority nonetheless intimates plaintiff was prejudiced because he remarried, fathered four more children, and took title to real estate.

III. This dissent first addresses the question whether equitable "estoppel by acquiescence" requires the element of harm or prejudice to the person asserting it. We so held in *Cullinan v. Cullinan,* supra, 226 N.W.2d at 36. That conclusion found ample support in authorities which state a necessary element of equitable estoppel requires the person asserting it to prove he or she incurred injury or prejudice, or the other party obtained benefits.

"Equitable estoppel rests largely upon injury or prejudice to the rights of him who asserts it, and it is said in this respect that it is the natural effect upon the party claiming an estoppel that gives it vitality. Broadly speaking, injury, detriment, or prejudice to the party claiming the estoppel is one of the essential elements of an equitable estoppel, or estop-

pel in pais. Since the function and purpose of the doctrine of estoppel are the prevention of fraud and injustice, there can be no estoppel where there is no loss, injury, damage, detriment, or prejudice to the party claiming it. Moreover, the injury or prejudice involved must be actual and material or substantial, and not merely technical or formal. * * *

"The rule that estoppel arises only where there is prejudice or the like applies whether the estoppel is based upon words, conduct, silence, delay, negligence, or acceptance of benefits."—28 Am. Jur.2d, Estoppel and Waiver, § 78, pp. 715–716

See also *Manson State Bank v. Diamond,* supra, 227 N.W.2d at 201; *State v. Raymond,* 254 Iowa 828, 836, 119 N.W.2d 135, 140 (1963); *Goodwin Tile & Brick Co. v. DeVries,* 234 Iowa 566, 568, 13 N.W.2d 310, 312 (1944); *Smith v. Coutant,* supra, 232 Iowa at 892, 6 N.W.2d at 424.

Majority seeks to modify *Cullinan* by analyzing and relying on *Anthony v. Anthony,* 204 N.W.2d 829, 834 (Iowa 1973). We there quoted language from *Humboldt Livestock Auction, Inc. v. B&H Cattle Co.,* 261 Iowa 419, 432, 155 N.W.2d 478, 487 (1967), which concerned only the knowledge element of "acquiescence." In turn, the *Humboldt* opinion quoted only from *Olson v. Clark,* 252 Iowa 1133, 1138, 109 N.W.2d 441, 444 (1961). The *Olson* opinion's reference to "acquiescence" cited only to *Atkins v. Reagan,* 244 Iowa 1387, 1390, 60 N.W.2d 790, 791 (1953). But both *Olson* and *Atkins* concerned "acquiescence" only in a very narrow and esoteric sense: where adjoining landowners occupy their respective premises to a certain line which they know is not the true one but which they mutually recognize as the dividing point for ten years, that line shall be established as a boundary. The doctrine dictates under those circumstances consent may be inferred from silence; in short, an owner may infer the other owner with knowledge the line is not the true one, has "waived or abandoned his right." The ten-year period is statutory. § 650.14, The Code.

The majority cites two Iowa decisions in addition to *Anthony* for its theory equitable estoppel by acquiescence in this jurisdiction does not require the detriment-or-benefit element, and therefore the *Cullinan* language, 226 N.W.2d at 36, imposing this requirement referred only to laches, not estoppel by acquiescence.

The first authority cited is *Olson v. Clark*, supra, which, as above noted, involved an acquiescence rule of real property applicable only to boundary lines and now statutorily embedded in our law.

The second case is *Carlson v. Smith*, 213 Iowa 231, 236 N.W. 387 (1931). There an elderly person about to travel to Sweden was persuaded by a foster daughter to deed her his farm with the agreement she was to return the instrument if he came back safely. When the grantor came back defendant refused to return the deed. An action in equity was instituted to set aside the conveyance. Both the grantor and his attorney testified to the arrangement, made in the lawyer's office. Defendant grantee claimed she did not agree to the plan as outlined by the grantor and his attorney, but merely remained silent. This court held:

> "A court of equity will not lend its countenance to an evasion of the effect of a transaction of this character on the ground that one sitting by with full knowledge of the understanding of the opposite party, and accepting the delivery of the deed with such understanding, did not acquiesce therein because of mere silence."—213 Iowa at 237, 236 N.W. at 389

A constructive trust was imposed. It is plain the court's action was based on fraud which if successful would have resulted in injury to the person asserting the acquiescence doctrine as well as benefit to the party guilty of fraud.

Neither of the above cases lend support to the concept for which they are cited.

Our application of equitable estoppel by acquiescence in *Anthony*, supra, 204 N.W.2d at 834, rested not only on reliance by defendant father, but on the unconscionable vindictiveness of the mother who sought to collect child support only when the daughter reestablished contact with defendant. There the plaintiff mother had executed a written release of "any lien existing" against defendant's property by virtue of the divorce decree. *Anthony* followed the usual rule that the doctrine of equitable estoppel by acquiescence ordinarily is applied to transactions in which it would be *unconscionable* to permit a person to maintain a position inconsistent with one in which he or she has acquiesced. 28 Am. Jur.2d, Estoppel and Waiver, § 57, p. 673. It is difficult to conceive an "unconscionable" situation in which the other party has not relied on the asserted acquiescence to his or her injury or prejudice, or the party against whom the doctrine is asserted has not obtained an unfair advantage.

The rules applicable with respect to the type of estoppel in issue here were distilled thoroughly in *Anfenson v. Banks*, supra, where plaintiffs who lost money in a bank failure sought to hold defendant liable as a partner on the theory he publicly did not deny or repudiate unauthorized publications he was a partner:

(1) "[W]hen the party is sought to be charged simply because he was silent, or because he has done nothing * * * the party claiming the estoppel assumes a * * * difficult burden," 180 Iowa 1095, 163 N.W. at 617;

(2) "[a] party setting up an estoppel by conduct is bound to the exercise of good faith and due diligence to know the truth," 180 Iowa at 1106, 163 N.W. at 620; and,

(3) it must clearly appear "that, by his * * * silence when as an honest man, he ought to have spoken, he has misled another to his injury, or has himself thereby acquired an unfair advantage," 180 Iowa at 1091, 163 N.W. at 616.

Clearly, our adjudicated cases hold the party attempting to assert equitable estoppel must have relied to his or her prejudice, or the party against whom it is asserted must have obtained an unfair advantage.

IV. Majority logically cannot assert defendant is estopped by virtue of any alleged statements made by her. To do so would be to rely on the alleged agreement of the type we held in *Anthony* violates public policy. Parenthetically, it should be noted defendant denied those alleged statements and plaintiff conceded he continued to make payments following the date he claims the conversation occurred.

The circumstances of this case therefore should be examined to determine whether plaintiff justifiably relied on defendant's failure to force him to pay what he owed her.

The majority finds plaintiff relied by ceasing to make child visitations, remarrying, fathering four more children, and taking title to real estate.

It is significant that plaintiff did not testify he relied on defendant's inaction (acquiescence) in any of these matters. He sought to show the alleged agreement above referred to, a pact we held in *Anthony*, supra, 204 N.W.2d at 834, to be "invalid for any purpose." Enforcement of such alleged agreements through the equitable estoppel doctrine only would frustrate the salutary rule of *Anthony* in every such situation.

Plaintiff promptly remarried. He was remarried when the alleged conversation with Van Lengen occurred. He never asserted he relied on any act or inaction of defendant in pursuing this course. Nor could he reasonably assert he was prejudiced by his remarriage, or becoming the father of four more children.

Much less could plaintiff assert reliance and resulting prejudice because he invested in real estate the money he should have used to pay child support. He came to live in a $50,000 home in which he had $32,000 equity. He now would resist paying the judgment installments with cheap dollars.

Plaintiff has shown neither reliance nor prejudice. He has failed to prove clearly, convincingly and satisfactorily each element necessary to invoke equitable estoppel by acquiescence.

I would reverse with directions to enter judgment for the defendant.

UHLENHOPP, HARRIS and McCORMICK, JJ., join in this dissent.