# IN THE COURT OF APPEALS OF IOWA

No. 21-0016
Filed November 3, 2021

**JONATHON LANGERMAN,**
    Plaintiff-Appellee,

**vs.**

**JOAN MOHR, Administrator of the Estate of Jerry Dean Mohr,**
    Defendant,

**and**

**PAMELA MOHR,**
    Defendant-Appellant.
_____

Appeal from the Iowa District Court for Osceola County, Don E. Courtney, Judge.

Pamela Mohr appeals the trial court's declaration Jonathon Langerman is an heir of Jerry Dean Mohr.  **AFFIRMED.**

Angie J. Schneiderman and Coyreen R. Weidner of Moore, Corbett, Heffernan, Moeller & Meis, L.L.P., Sioux City, for appellant.

John L. Sandy of Sandy Law Firm, Spirit Lake, for appellee.

Considered by Bower, C.J., and Vaitheswaran and Schumacher, JJ.

**BOWER, Chief Judge.**

Pamela Mohr appeals the trial court's declaration Jonathon Langerman is an heir of Jerry Dean Mohr.[1] She contends the court improperly considered anonymous letters in determining Jerry recognized Jonathon as his son and there is not clear and convincing evidence Jerry recognized Jonathon as his son. Finding no abuse of discretion or error of law, we affirm.

**I. Background Facts.**

Jerry, an Arizona vascular surgeon, died intestate in Arizona in 2011. He was married to Pamela at the time of his death. He and Pamela separated in 1994 but never divorced.

Amy Langerman attended Occidental College at the University of California before attending law school. She practiced law in Arizona beginning in 1983. Although she is still licensed to practice law in Arizona, she moved to California in 2002 and is currently a special education consultant working with children with disabilities.

Amy met Jerry through a mutual friend and, although she knew Jerry was married, she knew he was not happy in the marriage. They became "friends with benefits" sometime in 1990 or 1991. In 1994, Jerry and Amy engaged in planned sexual relations for the express purpose of conceiving a child. Amy had already had a child conceived in this manner with a different man. From the time she learned she was pregnant until the day she delivered the child, whenever she saw

---

[1] Because a number of participants in this litigation share last names, we will refer to them by their first names.

Jerry he acknowledged her growing belly and referred to the child as "my Baby Zygote." In December 1994, six-weeks premature, Amy gave birth to Jonathon.

Jerry moved to Flagstaff, Arizona in March 1996 where he lived and worked until his death in 2011. At the time of his death, Jerry was in a long-term relationship with another woman, Beth Cairns.

Amy learned of Jerry's death when a friend who worked at the Maricopa County Medical Hospital and knew that Jerry and she were friends contacted her to tell her that Jerry had died. She hired a probate attorney to file an action for paternity on Jonathon's behalf in Arizona. Paternity was established by obtaining tissue samples from a hospital where Jerry underwent surgery and submitting them for DNA testing. An Arizona court determined Jonathon is Jerry's biological child.

At issue here is whether Jonathon is an "heir" under Iowa Code sections 633.3(22) and 633.222 (2017), which would entitle him to share in the proceeds of the sale of Iowa farmland in which Jerry had an interest when he died.[2]

---

[2] The litigation road to this appeal is long and winding. *See Mohr v. Langerman*, No. 13-1422, 2014 WL 5243364, at *1 (Iowa Ct. App. Oct. 15, 2014) (*Mohr I*); *In re Estate of Mohr*, No. 16-1474, 2017 WL 3067435, at *1–2 (Iowa Ct. App. July, 19, 2017) (*Mohr II*). In *Mohr I*, this court affirmed an Iowa court's finding Pamela had failed to prove by clear and convincing evidence Jonathan was *not* an heir. 2014 WL 5243364, at *10 ("We further conclude the district court correctly determined Pamela had the burden of proving, by clear and convincing evidence, that Jerry did not recognize Jonathan, and did not err in concluding that Pamela failed to carry her burden."); *see also Mohr II*, 2017 WL 3067435, at *4 ("The probate court, in subsequent rulings, did not rule Langerman is Jerry's heir. In its March 23, 2016 ruling on the administrator's motion to amend inventory, the court specifically stated the 'Motion to Amend the Initial Inventory does not require the court to make a final determination on the status of Langerman as an heir entitled to take. That question remains open and subject to subsequent challenge.'").

Jonathon, represented by Amy as his attorney in fact and an Iowa attorney, sought a declaratory ruling he was Jerry's heir. His proposed exhibits included anonymous letters Amy received in early 2012, advising Amy of Jerry's death and stating Jerry was proud to have a son, had shared that sentiment with close friends, had shown pictures of his son with the author, and wanted his son to have money for college and his future. In one of the letters, the sender enclosed a number of correspondences and photos Amy had mailed to Jerry.

Pamela filed a motion in limine, asking the court to prohibit the admission of the anonymous letters, asserting a lack of authentication and foundation; even if foundation could be shown, the letters contained "multiple levels of hearsay, of which no exception can apply." The court allowed the exhibits subject to the objections and stated it would rule on the objections if it relied on the letters.

In its written ruling, the district court made these factual findings:

> In support of her position that the court should find that [Jerry] did recognize Jonathon as his child, [Amy] testified that in her first trimester of pregnancy her oldest child was exposed to Fifth disease. She took the child to the doctor and after the doctor diagnosed and assured her that the child would be fine she inquired if she should be concerned about her pregnancy because of her exposure[.] She was told to consult with another doctor. She contacted Jerry and he came over and they both got on the phone and called the Center for Disease Control (CDC). Jerry asked to speak to a geneticist and he introduced himself as a surgeon and that his girlfriend was having their baby and that she was exposed to Fifth disease. "Can you tell me the morbidity and mortality for intrauterine exposure to Fifth disease?" They found out that it's not a great thing to be exposed to but if something was going to happen, it would happen on its own and she would miscarry before [twenty] weeks. So they decided that there was no necessity to terminate the pregnancy and that she would carry it through and hope for the best.
>     On another occasion she had an ultrasound-guided amniocentesis and Jerry asked to attend with her. He came to pick her up and on the way she asked him "How do you want me to

introduce you?" He said, "How about Dad?" When her doctor came in she said, "Rick, this is Dad. Dad, this is Rick".

After Jonathon's birth he would come around on occasion to see his son and ask "How's my boy? How's my baby?" and kiss him. One day he shows up and her father is there. She answered the door and told him that her dad was there but he wanted to come in and said "I want to meet my son's grandfather." Amy testified that "We went in and I said to my dad, "Dad, this is my friend Jerry Mohr. Jerry shook his hand and said, "Hello, Mr. Langerman. I'm pleased to meet my son's grandfather." She also testified that Jerry told his mother about her grandson when she was dying from lung cancer.

[Amy], after [Jerry's] death, also received letters written by an anonymous friend, which Plaintiff relates bears directly on [Jerry's] state of mind relative to his son. These letters are subject to authentication and hearsay objections, which will be addressed later in this ruling. The deposition of Dorothea Wagner Riley was introduced and admitted. She resides in Cornville, Arizona, which she describes as a suburb of Sedona, Arizona. She is widowed and is [eighty-two] years old. [Jerry] was her and her husband's doctor and friend. She had a vivid dream and in the dream she dreamed about this little boy with blond hair and blue eyes. So she asked [Jerry], "Jerry, do you have a son?" And he said, "Yes." She also attended a Celebration of Life for Jerry. At some point she learned that Amy Langerman was the mother of Jerry's son.

Amy and [Jerry] maintained their relationship up until the time that Jerry moved to Flagstaff. But the contact between the two of them continued to be consistently inconsistent. She would send him a letter with cards, pictures, and on one occasion a videotape of Jonathon on Father's Day. They would speak with each other on the phone maybe twice in one week and then not for four or five months. She would contact him whenever there was something medical he should know about. Between 2006 and 2007 she spoke with him more frequently because he was having problems with his partnership in Flagstaff and he would ask her for advice because of her experience as an employment lawyer.

The court addressed the admissibility of the anonymous letters as follows:

[**Authentication.**] Authentication is satisfied by evidence sufficient to support a finding that the matter in question is what the proponent claims. Iowa R. Evid. 5.901(a). Under the identical federal counterpart, all that is needed is for the party authenticating the exhibit to "prove a rational basis for that party's claim that the document is what it is asserted to be." *Jones v. Nat'l Am. Univ.*, 608 F.3d. 1039, 1044 (8th Cir. 2010). Even anonymous correspondence may be sufficiently distinctive in its "appearance, contents, substance, internal patterns or other distinctive characteristics"

within the meaning of the identical federal rules of evidence, to meet the authentication requirements. *United States v. Bello-Perez*, 977 F.2d 664, 671 (1st Cir. 1992) [(citing] *United States v. Ingraham*, 832 F.2d. 229, 236 (1st Cir. 1987), *cert. denied*, 486 U.S. 1009 (1988) ([noting] authentication of telephone call and anonymous letters based on caller-authors "peculiar obsession with [and approach to] the same obscure litigation," amounting to an idiosyncratic "signature"))]; *see also United States v. McMahon*, 938 F.2d. 1501, 1508–09 (1st Cir. 1991) (authentication of unsigned note based on circumstantial indicia of authorship); *United States v. Newton*, 891 F.2d. 944, 947 (1st Cir. 1989) (authentication of unsigned document based on internal references to defendant's girlfriend, wife, lawyer and aliases). Ultimately, the requirement of authentication is designed to ensure that the court has enough indicia of trustworthiness that the document is what it purports to be— authentic. *Id.*

To authenticate an item of evidence, Federal Rules of Evidence 901(a) provides that "the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." "Proponents of evidence may authenticate an item through several methods including, '[t]he appearance, contents, substance, internal patterns, or other distinctive characteristic of the item, taken together with all the circumstances.'" *United States v. Young*, 753 F.3d 757, 773 (8th Cir. 2014) (alteration in original) (quoting Fed. R. Evid. 901(b)(4)). The contents of a writing may be considered in the authentication of the writing, and the proponent of the evidence may also use circumstantial evidence to satisfy the authentication standard. *Id.* "Notes . . . may be admitted despite the author's anonymity, especially when the writings demonstrate the author's intimate familiarity with the events in question." *Id.* Once this threshold is satisfied, the jury determines any further questions as to the evidence's authenticity. *Id.*; *Kaplan v. Mayo Clinic*, 653 F.3d. 720, 726 (8th Cir. 2011).

Ultimately, this court concludes that the requirement of authentication is designed to ensure that the court has enough indicia of trustworthiness that the document is what it purports to be—authentic. This court concludes that exhibits 20, 21, 22 and 23 [letters and enclosures] have been authenticated and they are what they purport to be, letters from a colleague and friend of [Jerry].

[**Hearsay.**] The court has studied the parties' arguments as to whether exhibits 20, 21, 22 and 23 contain hearsay. This court concludes that the statements contained in the letters are admissible not to prove the truth of the matter but to prove that the decedent recognized Jonathon Langerman as his son. See Iowa R. Evid. 5.801(c). This is a non-hearsay use. The court further agrees with Plaintiff's argument contained in Plaintiff's trial brief that even if the statements of [Jerry] were hearsay, they are admissible under

Iowa R. Evid. [5.]804(4)(b).  That rule provides that if a declarant if unavailable, including because of his death, statements he made concerning the relationship by blood of another person are admissible if the declarant was related by blood to the other person. Declarant's declarations of decedent, asserting and denying paternity, are admissible in evidence.  *Pike v. Standagel*, [175 N.W. 12, 13 (Iowa 1919)].  The court also concludes that the statements [Jerry] made to his colleague and friend that he was proud of his son are also separately admissible as evidence of declarant's then existing mental condition.  *See* Iowa R. Evid. 5.803(3)[;] *Westway Trading Corp. v. River Terminal Corp.*, 314 N.W.2d 398[, 402] (Iowa 1982) ([finding] evidence contained in a letter was admissible as circumstantial evidence of the state of mind of the declarant and is thus not hearsay).

Therefore the court concludes that exhibits 20, 21, 22 and 23 have been authenticated and are admissible because of the reasons cited by the court.

The district court concluded there was clear and convincing evidence Jerry recognized Jonathon such that Jonathon would be considered an heir in Iowa. Pamela appeals, contending the trial court improperly admitted the anonymous letters.  She also asserts there is not clear and convincing evidence of recognition to support the court's declaration.

## II. Scope and Standard of Review.

Generally, we review the admission of evidence for an abuse of discretion. *State v. Paredes*, 775 N.W.2d 554, 560 (Iowa 2009).  "'A court abuses its discretion when its ruling is based on grounds that are unreasonable or untenable.'  A ground is unreasonable or untenable when it is 'based on an erroneous application of the law.'"  *Andersen v. Khanna*, 913 N.W.2d 526, 535–36 (Iowa 2018) (citations omitted).

"Our review of an appeal from a declaratory judgment action is determined by how the case was tried in district court."  *Clarke Cnty. Reservoir Comm'n v. Robins Revocable Tr.*, 862 N.W.2d 166, 171 (Iowa 2015).  We review de novo a

declaratory action tried as an equitable proceeding. *Davidson v. Van Lengen*, 266 N.W.2d 436, 438 (Iowa 1978). We give weight to the findings of fact made by the trial court, but are not bound by them. *Id.*

**III. Discussion.**

*A. Anonymous letters.* Pamela asserts the court abused its discretion in finding the anonymous letters sufficiently authenticated to be admissible. She argues the identity of the author must be demonstrated. But she cites no rule or case law to support this assertion.

"Authentication or identification represents one component in the relevancy determination with regard to certain types of evidence, such as the contents of a document, telephone call or other exhibits." Laurie Kratky Doré, 7 *Iowa Practice Series: Evidence* § 5.901:0 (Nov. 2020 update) (footnote omitted). Iowa Rule of Evidence 5.901(a) states, "To satisfy the requirement of authenticating . . . an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." The authentication burden is not high, it need only allow a reasonable factfinder to find the evidence is authentic. *See United States v. Hassan*, 742 F.3d 104, 133 (4th Cir. 2014) (discussing Federal Rule of Evidence 901). The district court has the discretion to determine whether a party has established a proper foundation. *State v. Musser*, 721 N.W.2d 734, 750 (Iowa 2006).

The court properly observed, "The contents of a writing may be considered in the authentication of the writing, and the proponent of the evidence may also use circumstantial evidence to satisfy the authentication standard." In *Young*, the Eighth Circuit court observed:

Federal Rule of Evidence 901(a) provides that, to authenticate an item of evidence, "the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Proponents of evidence may authenticate an item through several methods including, "[t]he appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances." Fed. R. Evid. 901(b)(4).[3] A proponent of evidence may use circumstantial evidence to satisfy this standard. Once the proponent satisfies this burden, the [factfinder] determines any further questions as to the evidence's authenticity. The contents of the writing may be considered to authenticate it. Notes and other documents may be admitted despite the author's anonymity, especially when the writings demonstrate the author's intimate familiarity with the events in question.

753 F.3d at 773 (internal case citations omitted); *accord United States v. Ramirez-Martinez*, 6 F.4th 859, 866 (8th Cir. 2021).

Here, there is sufficient evidence in the record from which the trial court could determine the letters were what they purported to be—letters from a close friend of Jerry. The writings demonstrate the author's intimate familiarity with Jerry; Jerry's lack of a will and his assets; the ongoing filings in the Arizona litigation; and Jerry's relationships with Pamela, Beth, and Amy. We find no abuse of discretion in the court's authentication ruling.

Pamela also asserts the court erred in finding the anonymous author's statements were not hearsay. However, she does not specify which statements in the letters *are* hearsay, i.e., statements offered for the proof of the matter asserted. *See* Iowa R. Evid. 5.801(c). Consequently, we have nothing to review.

---

[3] The Iowa evidentiary rule is identical. *See* Iowa R. Evid. 5.901(a), (b)(4). It is appropriate to look to federal decisions applying the identical rule for guidance. *See Paredes*, 775 N.W.2d at 561 ("Our rule of evidence is identical in all relevant aspects to its federal counterpart . . . . As a result, interpretations of the federal rule are often persuasive authority for interpretation of our state rule.").

*B. Sufficiency of the evidence of recognition.* The district court correctly set out the relevant law, admittedly with some faulty citations, which we have corrected below:

> Iowa Probate Code section 633.222 relates to the rights of biological children and establishes how a biological child can establish "legitimacy" for purposes of inheritance in Iowa. That provision currently provides:
>
> **633.222 biological child—inherit from father**
>
> Unless the child has been adopted, a biological child inherits from the child's biological father if the evidence proving paternity is available during the father's lifetime, or if the child has been recognized by the father as his child; but the recognition must have been general and notorious, or in writing. Under such circumstances, if the recognition has been mutual, and the child has not been adopted, the father may inherit from his biological child.
>
> A contested heir must show heirship by clear and convincing evidence. Recognition means "to admit the fact, truth or validity" of a matter. [*In re Estate of Evjen*, 448 N.W.2d 23, 25 (Iowa 1989).] In the context of heirship, it means the father admitted or acknowledged the paternity. *Id.* Recognition need not be universal or so general and public as to have been known by all. *Id.* If the father denies paternity, as opposed to openly acknowledging it, recognition is less likely to be found. *Id.* In the absence of written recognition, "recognition must have been general and notorious." Iowa Code § 633.222. "Recognition is a mental process . . . made manifest by overt acts or speech." [*Trier v. Singmaster*, 167 N.W. 538, 541 (Iowa 1918).] Recognition may occur even though there are efforts to conceal the facts from some. *Id.* "It is generally held that recognition need not be 'universal or so general in public as to have been known by all'; need not be continuous, 'covering the whole period up to and including the time of the death of the putative father.'" *[In re Wulf's Estate*, 48 N.W.2d 890, 894 (Iowa 1951)]. "A general and notorious recognition does not necessarily mean a continuous recognition covering the whole period up to and including the time of the death of the putative father. *A recognition clearly shown to have been once deliberately and publicly made, made under circumstances that revealed no apparent motive to conceal, meets the requirements of the statute.*" [*In re Clark's Estate*, 290 N.W. 13, 30 (Iowa 1940) (quoted in *Mohr II*, 2017 WL 3067435, at *4)).]

While Jerry did not reveal his parenthood to Pamela or Beth, there is clear and convincing evidence of a general and notorious recognition of Jonathon as his son. Jerry's close friend was enlisted to safeguard correspondence from Amy and the enclosed pictures of Jonathon. We observe

> the letters indicate that Jerry was proud to have a son and that he shared that with close friends and colleagues. He shared pictures of his son with the author of the letter and others. Jerry had told the author of the letters that he wanted to make sure his son had enough money for college and possibly a little for the future. The author of the letters informed Amy that Jerry talked about his son more than you will ever know and that Jerry had told him that Amy was the mother of his child and that was where and how he knew to send the anonymous letters.

Jerry told Dorothea Riley, a patient and friend, he had a son; and, Dorothea learned this was known by others at Jerry's memorial. Pamela herself (after Jerry's death) learned it was "common knowledge" at the hospital Jerry worked that he had fathered a child with Amy. Further, the district court found the mother in this case to be credible. Amy testified to extensive contact and recognition of Jonathon as his son. We therefore affirm the court's declaration Jonathon is Jerry's heir.

**AFFIRMED.**