STATE of Iowa ex rel. Wendy N. HOLLEMAN, Appellee,

v.

Gary R. STAFFORD, Appellant.

No. 97–74.

Supreme Court of Iowa.

Sept. 23, 1998.

Joseph G. Basque of Legal Services Corp. of Iowa, Council Bluffs, for appellant.

Thomas J. Miller, Attorney General, Diane M. Stahle, Special Assistant Attorney General, Mark Haverkamp, Assistant Attorney General, and Andrew Dopheide, Assistant County Attorney, for appellee.

Considered by McGIVERIN, C.J., and HARRIS, CARTER, SNELL, and ANDREASEN, JJ.

CARTER, Justice.

This appeal involves the registration in Iowa of a child support order from the State of Washington pursuant to Iowa Code section 252A.17 (1997). The support obligor under that order, Gary Stafford, unsuccessfully challenged the order in the district court and renews that challenge in this court. Upon viewing the record and considering the arguments presented, we affirm the judgment upholding the registration, although we

slightly modify the district court's conclusions of law concerning the application of the statute of limitations.

. Wendy and Gary Stafford's marriage was dissolved by a Washington court on January 10, 1975. The decree granted custody of the couple's two children to Wendy and ordered Gary to pay $100 per month per child on or before the tenth of each month until the children were self-supporting, of legal age, or emancipated. Gary subsequently moved to Iowa. On September 12, 1977, Wendy filed a petition for support under the Uniform Reciprocal Enforcement of Support Act (URESA) in Fremont County, Iowa.[1] That petition recited that Gary had failed to make support payments since September of 1975.

The district court in Fremont County issued an order on October 24, 1977, requiring Gary to make support payments in the amount of $100 per month payable on the fifteenth of each month. The payments were to be made to the Clerk of Fremont County and remitted to the Superior Court for Snohomish County, Washington. The Iowa URESA order was substantially less onerous than the Washington order because the payments were $100 per month rather than $100 per month per child. Moreover, it was prospective only and did not account for the existing arrearage. The duration of the Iowa support order was limited to the period of time that the children were under age eighteen. Consequently, when the total of all payments required by the Iowa URESA order had been made, an arrearage of more than $14,000 remained in the support due under the Washington judgment.

On September 27, 1996, Iowa's Child Support Recovery Unit, acting on Wendy's behalf, filed a verified statement for registration of a foreign support order in Fremont County. Gary filed a motion to dismiss the judgment arguing that, because Wendy had chosen an alternative remedy of obtaining an Iowa support order under URESA, she could not later attempt to register the foreign or-

---

1. Our Uniform Support of Dependents Law, enacted in 1949 (1949 Iowa Acts ch. 103), was substantially amended in 1955 (1955 Iowa Acts ch. 129) to incorporate sections of the Uniform Reciprocal Enforcement of Support Act. *See In re* *Marriage of Russell,* 490 N.W.2d 810, 812–13 (Iowa 1992) (discussing adoption of URESA provisions in Iowa legislation). We will refer to the statutory provisions involved in the present case as URESA.

der in Iowa. He also urged that the defenses of equitable estoppel and laches would bar registration of the judgment and that the statute of limitations precludes collection of a substantial portion of the amount yet owed on the Washington judgment. The district court rejected all of Gary's challenges.

## I. Scope of Review.

■ The filing of a support order is in equity. Iowa Code § 252A.17 (1997). Our review of equity matters is de novo. Iowa R.App. P. 4.

## II. Election of Remedies.

■ Gary argues that because Wendy obtained an Iowa support order under URESA in 1977 she is now precluded from registering the Washington support order in Iowa. He relies heavily on a New Jersey case that denied registration of an out-of-state support order because a New Jersey court had previously ordered support payments under URESA based on the out-of-state judgment. *See Rimsans v. Rimsans,* 261 N.J.Super. 214, 618 A.2d 854 (App.Div.1992). Although the New Jersey case involved similar facts, we find that the result it reaches is incompatible with the provisions of Iowa Code section 252A.6(15) and our own prior case law.

Section 252A.6(15) provides:

[A]ny order of support issued by a court of the state acting as a responding state shall not supersede any previous order of support issued in a divorce or separate maintenance action, but the amounts for a particular period paid pursuant to either order shall be credited against amounts accruing or accrued for the same period under both.

In *State ex rel. Blakeman v. Blakeman,* 337 N.W.2d 199 (Iowa 1983), we addressed this statute and declared:

The majority of jurisdictions hold under uniform support acts that the support award of the responding state does not affect the original order of support except to the extent that payments on either order must be credited to the other. . . .

*Blakeman,* 337 N.W.2d at 202. We reaffirmed our *Blakeman* interpretation in *Iowa Department of Human Services ex rel. Green-*

*haw v. Stewart,* 579 N.W.2d 321, 325 (Iowa 1998).

Based on the plain language of the statute and our prior case law applying it, the obtaining of the 1977 URESA support order in no way restricted Wendy from using other available remedies to assist her in collecting the unpaid balance of the Washington judgment. Registration of that judgment in this state pursuant to section 252A.17 was one of the means available to her in pursuit of that goal. Registration of out-of-state judgments in a responding state after the responding state has previously issued a support order requiring monthly payments to apply on the out-of-state judgment has been approved in other jurisdictions. *See Talbot v. Talbot,* 99 Mich.App. 247, 297 N.W.2d 896, 900 (1980); *In re Christensen,* 169 Misc.2d 141, 643 N.Y.S.2d 876, 878 (N.Y. Family Ct.1996); *In re Kaplan,* 167 A.D.2d 652, 563 N.Y.S.2d 241, 242 (1990). The district court properly concluded that the prior URESA support order did not preclude a supplemental remedy of registering the Washington judgment pursuant to section 252A.17.

## III. Equitable Estoppel and Laches.

Defendant argues that Wendy is estopped from registering and enforcing the support order because of his detrimental reliance in satisfying all payments required of him under the Iowa support order. He urges that this detrimental reliance also supports a claim of laches.

■ Laches is an equitable doctrine premised on unreasonable delay in asserting a right, which causes disadvantage or prejudice to another. *First Fed. Sav. & Loan Ass'n v. Blass,* 316 N.W.2d 411, 414 (Iowa 1982); *Davenport Osteopathic Hosp. Ass'n v. Hospital Serv., Inc.,* 261 Iowa 247, 261, 154 N.W.2d 153, 162 (1967). The party asserting the defense has the burden to establish all the essential elements thereof by clear, convincing, and satisfactory evidence. *Moser v. Thorp Sales Corp.,* 256 N.W.2d 900, 908 (Iowa 1977). Prejudice is an essential element of laches. *Blass,* 316 N.W.2d at 415; *Davidson v. Van Lengen,* 266 N.W.2d 436, 439 (Iowa 1978). The doctrine of equitable estoppel similarly requires a showing of sub-

stantial prejudice. *Anita Valley, Inc. v. Bingley,* 279 N.W.2d 37, 41 (Iowa 1979).

▮ In seeking to sustain his equitable defenses against collection of the judgment, Gary asserts that, if he had been informed that the October 1977 URESA order did not completely supersede his obligations under the Washington judgment, he could have acted to modify the Washington judgment or, in the alternative, could have made larger child support payments in compliance with the Washington order. We believe that these bare assertions are too speculative to establish the requisite prejudice required to sustain a laches or equitable estoppel defense. We note in this regard that the record shows that Gary was aware of Internal Revenue Service intercepts of his income tax refunds in 1987, 1988, and 1992 based on the unsatisfied child support obligation remaining in the State of Washington. This circumstance is entirely inconsistent with a reasonable belief on his part that the Washington support order was no longer viable. Gary, as the party asserting these equitable defenses, had the burden to sustain them by sufficient proof, *see Blass,* 316 N.W.2d at 414, and has failed in that regard.

### IV. *Statute of Limitations.*

When the foreign child support judgment was filed in Fremont County in September 1996 and when the district court ruled on Gary's challenges thereto in December 1996, the Iowa statute of limitations pertaining to all judgments was twenty years. Iowa Code § 614.1(6) (1995). Gary urges that the Washington statute of limitations for executing on judgments has been ten years throughout the relevant period of time. However, Iowa Code section 252A.4A(2) provides:

> In an action to enforce a child support order, a court shall apply the statute of limitations of the forum state or the state of the court or administrative agency that issued the order, whichever statute provides the longer period of limitations.

Gary argues that application of the Iowa twenty-year statute of limitations is inconsistent with Iowa Code section 614.7, which provides that, "[w]hen a cause of action has been fully barred by the laws of any country where the defendant has previously resided, such bar shall be the same defense here as though it has arisen under the provisions of this chapter." The term "country," as used in this statute, has been interpreted to mean the several states of the United States. *Andrew v. Ingvoldstad,* 218 Iowa 8, 12, 254 N.W. 334, 336 (1934).

▮ Section 614.7 is a general statute applicable to foreign judgments of all types. Section 252A.4A(2) is a specific statute governing out-of-state judgments sought to be collected in Iowa under the URESA statutes. When there is a conflict between a specific statute and a general statute, the provisions of the specific statute will control. *Hillview Assocs. v. Palmer,* 456 N.W.2d 909, 910 (Iowa 1990); *Goergen v. State Tax Comm'n,* 165 N.W.2d 782, 787 (Iowa 1969). We thus agree with the district court's conclusions that, at the time the Washington judgment was registered here in September 1996, the applicable statute of limitations was twenty years.

▮ Section 614.1(6) acts to bar execution on a judgment more than twenty years beyond the date of its entry. *James v. Weisman,* 161 Iowa 488, 492–93, 143 N.W. 428, 429 (1913). With respect to continuing periodic payments under a support order, a new twenty-year statute of limitations applies to each periodic payment from the time it is due. *Bennett v. Tomlinson,* 206 Iowa 1075, 1081, 221 N.W. 837, 840 (1928). In *In re Marriage of Logsdon,* 510 N.W.2d 160 (Iowa App.1993), the court of appeals held that, on a judgment requiring payment of alimony in periodic installments, the statute of limitations "has run only on the part of the alimony arrearage which dates back more than twenty years prior to [the obligee's] collection efforts." *Logsdon,* 510 N.W.2d at 161.

▮ In calculating the unbarred portion of Gary's child support obligation, the district court concluded "only collection of payments due more than 20 years before September 27, 1996, the date of the attempted registration, are barred." Gary takes issue with this and argues that the statute of limitations continues to run prospectively until levy of execution on the judgment. Wendy, relying

on the language of the court of appeals in *Logsdon,* urges that "collection efforts" toll the statute of limitations on judgments. We disagree. Although some states have held that registration of a foreign judgment in that state creates a new judgment with a new period of limitations, *see Warner v. Warner,* 9 Kan.App.2d 6, 668 P.2d 193, 195 (1983), we are not inclined to take that position. We adopt the approach of other courts that count the time for applying the statute of limitations on foreign judgments registered in those states from the time the judgment was entered in the foreign jurisdiction. *See Eschenhagen v. Zika,* 144 Ariz. 213, 696 P.2d 1362, 1368 (Ct.App.1985); *Yusten v. Monson,* 325 N.W.2d 285, 287 (N.D.1982).

 Without deciding the extent of the court's power to enforce any portion of the unsatisfied support award through the contempt power, we agree with Gary that the statute of limitations on enforcement of the Washington judgment by writ of execution was not tolled by its registration in this state and continued to run based on the times the payments became due under the Washington judgment. That situation changed, however, on July 1, 1997, with the enactment of 1997 Iowa Acts ch. 175, section 235. That statute repealed any existing statute of limitations on child support awards. Although this statute could not resurrect periodic payments already barred by the statute of limitations in force prior to July 1, 1997, *see Woodroffe v. Hasenclever,* 540 N.W.2d 45, 46 (Iowa 1995); *In re Estate of Weidman,* 476 N.W.2d 357, 363–64 (Iowa 1991), there has been no further bar of the Washington support order by the statute of limitations after July 1, 1997. We therefore modify the district court's order so as to provide that only collection of payments due more than twenty years prior to July 1, 1997, is barred by the statute of limitations.

As a final matter, we reject Gary's contention that in determining which delinquent support payments are barred by the statute of limitations the payments that he has made should be applied against the most recent installment then owing rather than the oldest portion of the arrearage. A case referred to in Gary's written argument suggests that this is not so. In *In re Marriage of Maccarone,* 54 Wash.App. 502, 774 P.2d 53, 55 (1989), the Washington Court of Appeals held that, for purposes of determining which past-due child support payments were barred by the statute of limitations, the payments that were made by the child support obligor should be applied to the oldest unpaid periodic support payment not already barred by the statute of limitations at the time the payment is tendered. We conclude that this is the most equitable approach to this issue and adopt the allocation scheme of the Washington court as the one to be followed in this state in applying the statute of limitations to periodic support obligations. We have considered all issues presented. Subject to the modification we have made concerning the statute of limitations, we affirm the judgment of the district court.

**AFFIRMED AS MODIFIED.**