# IN THE COURT OF APPEALS OF IOWA

No. 22-0259
Filed February 8, 2023

**BRIAN HORA and GREGG HORA, Individually and on behalf of HORA FARMS, INC., and PRECISION PARTNERS CORP.,**
        Plaintiffs-Appellants/Cross-Appellees,

**vs.**

**KEITH HORA and KURT HORA, Individually and in their capacity as Shareholders, Directors, Officers, Managers, and Employees of HORA FARMS, INC., HEATHER HORA, and HK FARMS, INC.,**
        Defendants-Appellees/Cross-Appellants.
_____

Appeal from the Iowa District Court for Washington County, Sean W. McPartland, Judge.

The plaintiffs appeal, and the defendants cross-appeal, from the ruling denying the plaintiffs' shareholder derivative claims and the plaintiffs' request to remove a trustee. **AFFIRMED IN PART, REVERSED IN PART, AND REMANDED WITH DIRECTIONS.**

John F. Lorentzen of Nyemaster Goode, PC, Des Moines, and Sarah J. Gayer of Nyemaster Goode, PC, Cedar Rapids, for appellants/cross-appellees.

Stephen J. Holtman and Abram V. Carls of Simmons, Perrine, Moyer, Bergman, PLC, Cedar Rapids, for appellee/cross-appellant Keith Hora.

Joseph W. Younker and Matthew G. Brand of Bradley & Riley, PC, Iowa City, for appellees/cross-appellants Kurt Hora, Heather Hora, and HK Farms, Inc.

Heard by Bower, C.J., and Badding and Buller, JJ.

**BULLER, Judge.**

This dispute centers on the management of Hora Farms, Inc. (HFI). Brothers Brian and Gregg Hora filed this shareholder derivative lawsuit on behalf of HFI, claiming breach of fiduciary duty and fraud, seeking appointment of a custodian for HFI, and requesting removal of the trustee of a shareholder trust. After an eleven-day trial, the district court dismissed Brian and Gregg's claims, and they appeal. The defendants cross-appeal, reasserting their defenses below and requesting appellate attorney fees. We affirm in part and reverse in part, finding the district court erred in its application of the law regarding self-dealing and breach of fiduciary duty. We find Defendants Keith Hora and Kurt Hora breached their duties, and we remand for further proceedings consistent with this opinion, including a determination of damages and ruling on indemnification. We also vacate the ruling on appointment of a custodian and removal of the trustees, and we remand for the district court to decide that question in light of this opinion. Finally, we deny all requests for appellate attorney fees.

## I. Background Facts and Proceedings

### A. The Hora Family and Relevant Entities

Keith Hora was born on an Iowa farm in 1938 to George and Marie Hora. He has two younger siblings: Kathy and Kevin. Keith married Celeste in 1959, and together they had six children between 1960 and 1968: Gregg, Brian, Dana, Kurt, Darren, and Heidi. Kurt is married to Heather.

The Celeste N. Hora Trust ("the Trust") is a testamentary trust, created upon Celeste's death in 1989. Keith has been the Trust's sole trustee since its creation.

Keith and Celeste's six children are the Trust's beneficiaries, with each child to receive an equal share of trust property, per stirpes, upon Keith's death.

HFI was incorporated in Iowa in 1974, with George and Keith serving as the initial directors. HFI owns 1075 acres of land in or near Washington County, and it grew corn and soybeans at all times relevant here. At the time of trial, HFI had 1200 Class A voting shares: Keith owns 501 shares, the Trust owns 303 shares, and Kathy and Kevin each own 198 shares. HFI also had 3600 Class B non-voting shares: Keith owns 868 shares, the Trust owns 867 shares, Kathy and Kevin each own 548 shares, and Keith and Celeste's six children each own 128 or 129 shares.

Kurt and Heather formed HK Farms, Inc., through which Kurt grows crops and feeds swine from wean to finish. Brian and his wife formed Precision Partners Corp., through which Brian conducts farm activities.

### B. Pre-Litigation Facts

Gregg worked for HFI from 1982 to 1985; he then left HFI and the area and had no further involvement in HFI's daily operations. Brian began working for HFI in 1985. Kurt began working for HFI in 1988. Brian supervised Kurt and HFI's operations during this time, and Kurt testified Brian was "extremely difficult to work with."

George died in 1995. Marie soon replaced George as a director of HFI alongside Keith. Keith has served as HFI's president since George's death, while Marie has never held an officer position.

In fall 2000, an argument on the farm erupted between Keith, Brian, and Kurt. Kurt ended up quitting HFI, and Brian was fired. Brian has since done a little farm work for HFI but has had no involvement with managing the company. HFI

rehired Kurt in 2001 in a managerial role, and he continued to serve as operations manager through trial. When Kurt returned to HFI, he received hourly pay, bonuses based on production, and reimbursement for certain expenses. Kurt also claims he took part of his compensation in corn used for feed in his swine operation. In 2003 or 2004, Kurt and Keith agreed to estimate Kurt's use of corn at nine bushels per hog Kurt sold.

Marie continued as a director until her death in March 2015 at the age of ninety-nine. Soon after her death, Gregg and Brian began raising concerns to Keith and Kurt about HFI's financial situation, specifically HFI's negative cash flow and corn that could not be found and was not sold. In August, Gregg was elected to replace Marie as director alongside Keith. Gregg resigned less than one year later, stating Keith and Kurt were preventing HFI from adopting changes needed to reverse HFI's trend of accumulating more debt. Darren was elected as a director in 2017, and he and Keith continued to serve as directors at the time of trial.

On August 18, 2017, Brian, Gregg, and Precision Partners (plaintiffs) filed their petition against Keith, Kurt, Heather, and HK Farms[1] (defendants). The plaintiffs eventually amended their petition and advanced five counts: (1) Keith and Kurt breached their fiduciary duties to HFI through mismanagement, self-dealing, and other actions; (2) Keith and Kurt committed fraud, fraudulent concealment, and fraudulent misrepresentation; (3) a custodian should be appointed for HFI; (4) Keith should be removed as trustee of the Trust; and (5) Keith interfered with the business relations of Precision Partners. On the plaintiffs' motion, the court

---

[1] The petition also included claims against Keith's current wife. The court denied those claims, and the plaintiffs do not pursue those claims on appeal.

severed Count 5 for a separate trial on the interference-with-business-relations count. The court later granted the defendants' partial motion for summary judgment, finding the five-year statute of limitations barred the plaintiffs' claims arising before August 18, 2012.

The facts developed at trial established multiple family members, including Keith, expressed concern about the significant discrepancy between the amount of corn produced by HFI and the amount of corn actually sold. By some estimates, as much as nearly one third of the corn produced each year was missing. Related concerns were expressed about HFI's lack of profitability and increasing debt when the market for corn and soybeans was quite good. At the same time the business was losing money, Kurt and his farming operation had an increased net worth of nearly $1.5 million. Keith's net worth also increased during the same time period, though perhaps not to the same extent as Kurt's. When minutes were circulated after a meeting, Heather (Kurt's wife) e-mailed the family reminding everyone that they had discussed "Keith[']s personal net worth & debt" because "this may be important in finding the holes in the dam or however it was put."

Kurt obfuscated and offered shifting stories to explain what happened to the missing corn. At one point, Kurt claimed that all of the missing corn was explainable due to damage or shrink during processing. But evidence in the record undermines that claim. For example, Kurt claimed a monitoring-equipment failure to the tune of 3.3% for eight years, yet such a malfunction was never reported to the crop insurer. At another point, Kurt claimed to have loaned a nebulous "corn tab" in excess of 85,000 bushels to HFI through his company, HK Farms. Yet Kurt's own settlement sheets indicate he sold or used HK Farms's entire corn

production in the relevant years, and no documentation of the loan appears in tax forms or business records for either entity. Kurt also claimed that the missing corn could be explained by the cleaning process, but for that explanation to work, hundreds of semi-trailers worth of debris would have been removed from the farm, and there is no evidence that ever happened.

Faced with significant evidence that he used HFI corn as feed in his swine operation, Kurt eventually admitted to taking at least 85,000 bushels of corn, but he claimed he was entitled to the corn as compensation or backpay. No corroboration for the backpay was submitted at trial, and it is undisputed that Kurt did not report use of the corn taken from HFI on either his personal tax returns or HK Farms's tax returns. A conservative valuation of corn taken by Kurt is roughly $450,000 for 85,000 bushels, and a more-aggressive valuation is more than $1 million for at least 200,000 bushels. The more-aggressive valuation, from the plaintiffs' expert, is generally consistent with Keith's own estimates of missing corn. The more-aggressive valuation is also corroborated by Keith reporting to the family that HFI's long-time banker repeatedly asked Keith why HFI's records show it sells all the soybeans produced "but never come[s] close to selling and accounting for the bushels of corn that were produced." In any event, the amount of backpay Kurt claimed was $179,000, and he took at least $250,000 more in corn than he was he was allegedly owed, even if his version of events was true.

Given the abysmal record-keeping, all parties admit some difficulty in determining the exact amount of corn taken by Kurt. Kurt claimed to have originally estimated what he took based on an Iowa State University formula, but this could not be reconciled with other record evidence regarding the amount of corn missing

from HFI each year during the relevant periods. Kurt admitted at trial that his estimate system was not accurate, and he conceded that he should have switched to a computerized system at least ten years sooner. In 2015, Keith sent a message to the family members observing that, if all of the missing corn was used by Kurt to feed his swine, "then I AM a terrible manager and will seek outside help" to manage the farms and resolve the issue. Keith also remarked to family members that Kurt "had too good of a deal," at the expense of the company. Consistent with these remarks, HFI's paid consultant described Kurt's deal with Keith as "too sweet."

Trial evidence also established, with little dispute, that Keith used HFI resources to pay personal expenses for himself and his wife without any legitimate business purpose. The expert testimony valued these personal expenses at $193,223. The $193,233 includes football tickets that were falsely accounted for as crop expenses or building-repair costs, as well as department-store purchases, travel lodging or time-share purchases, and groceries from a variety of locations in and outside of Iowa. Keith did not deny the expenses, but he claimed they were part of his compensation. No documentation corroborated this claim or established that HFI paying thousands of dollars in personal expenses was compensation for any of Keith's roles. Keith also failed to report the income to taxing authorities as compensation or pay appropriate tax on it. In addition, HFI double-compensated Keith for his vehicle, paying both mileage and all of the operating expenses (fuel, service, maintenance, license, and insurance) for the same vehicle. In other words, Keith double-dipped his vehicle reimbursement.

Following an eleven-day trial in July and August 2020, the district court rejected the plaintiffs' claims and dismissed Counts 1 through 4. The plaintiffs voluntarily dismissed Count 5. The plaintiffs filed a motion to reconsider, which the court denied in full other than nonsubstantive corrections to the facts. The defendants also filed an application for costs and fees, which the court denied.

The plaintiffs appeal the dismissal of Counts 1 through 4 and seek appellate attorney fees. The defendants cross-appeal, also seeking appellate attorney fees.

## II. Standard of Review

The parties agree the claims below were tried in equity, implicating our de novo review. Iowa R. App. P. 6.907. We give weight to the fact findings of the district court, especially with regard to witness credibility, but we are not bound by them. Iowa R. App. P. 6.904(3)(g).

## III. Defendants' Preliminary Defenses

We first address the various preliminary defenses asserted by the defendants, including statutory claims based on standing and the statute of limitations, as well as equitable claims based on the doctrines of estoppel, laches, and unclean hands. The district court partially agreed with the defendants regarding the statute of limitations but otherwise rejected all preliminary defenses. We do the same on appeal, with a modification regarding the statute of limitations due to our subsequent holding regarding breach of fiduciary duties.

### A. Standing

The defendants below asserted that the plaintiffs lacked standing under the Iowa Business Corporation Act. *See* Iowa Code ch. 490 (2017). The district court

found standing during the summary-judgment proceedings and re-affirmed that finding following the lengthy bench trial. We affirm these rulings.

Iowa law generally bars derivative actions unless the plaintiffs are (1) shareholders (2) who fairly and adequately represent the interests of the corporation. *Id.* § 490.741. The district court correctly noted that no Iowa case law speaks to how the burden is allocated under this section, but we agree with the district court that the text of the statute allocates the burden of proving standing to the plaintiffs. *Id.* (prohibiting suit "unless the shareholder satisfies" the statutory requirements).

It is undisputed that Brian and Gregg were shareholders of HFI at all relevant times. We also have little difficulty concluding that they fairly and adequately represent the interests of the corporation. The remedies they seek are not for their individual profit, but instead to benefit all shareholders and to further the corporation's interests. We also affirmatively find that the plaintiffs did not initiate this derivative action for any improper purpose. The plaintiffs have carried their burden to prove standing.

The only substantial case law marshaled by the defendants is a Wisconsin case, *Read v. Read*, 556 N.W.2d 768 (Wis. Ct. App. 1996). But we find *Read* easily distinguished, and we share the district court's observation that the defendants' reliance on *Read* is "misplaced if not misleading." The procedural posture of *Read* involved the plaintiffs seeking to amend a suit to allege a closely held corporation more than two years after the suit was filed and less than two weeks before trial. *See* 556 N.W.2d at 563–74. Here, the petition always alleged a closely held corporation. As a result, this case does not involve the issue at the

heart of *Read*, which concerns available remedies for bringing suit against a closely held corporation (which may operate more like a partnership) as compared to a traditional corporation. *See, e.g.*, *Redeker v. Litt*, No. 04-0637, 2005 WL 1224697, at *4 (Iowa Ct. App. May 25, 2005) (noting a distinction in available remedies). *Read* does not alter our analysis, and the district court did not err in finding standing.

Last, we reject the claim made in Keith's appellate brief that seeking to appoint a custodian or guardian for the corporation necessarily obviates standing due to the original purpose of HFI's incorporation. It is not improper for concerned shareholders to request this equitable remedy when the allegations concern corrupt management and self-dealing, as the plaintiffs allege here.

### B. Statute of Limitations

The district court twice partially granted and partially denied the statute-of-limitations claim below, first at the summary-judgment stage and again following trial. In short, the court limited the evidence to claims based on conduct that arose on or after August 18, 2012, based on the five-year statute of limitations. *See* Iowa Code § 614.1(4).

Now on appeal, both parties seek to relitigate the statute of limitations. We affirm the district court. Given our ruling later in this opinion, however, we clarify application of the statute of limitations as it relates to the conduct we find breached an essential duty.

First, we reject Kurt's claim on appeal that the misappropriated-corn claim is barred by the statute of limitations. Kurt admitted at trial that he took at least 30,000 bushels in 2015, and he failed to prove that any portion of the

misappropriated corn was taken before August 2012. Under these circumstances, we find that all damages related to misappropriated corn are recoverable by the plaintiffs, and we direct the district court to abide by this ruling when evaluating damages consistent with the balance of this opinion. *See Earl v. Clark*, 219 N.W.2d 487, 491 (Iowa 1974) ("If the [statute of limitations] defense is partial only, barring only a part of the damage, defendant has the burden of proving what part of the damage occurred before the running of the limitation period." (citation omitted)). Second, to the extent our directions on remand implicate a similar question concerning Keith's personal expenses, the district court shall determine damages consistent with this opinion. Finally, to the extent any dicta in the district court's ruling is inconsistent with these directions, the dicta is vacated.

### C. Estoppel and Laches

On appeal, the defendants reiterate their equitable defenses, arguing equity principles should have been a complete bar to litigation. While the defendants concede the district court "properly articulated" the law regarding laches and estoppel, they claim the district court improperly melded the statute of limitations and these equitable defenses. We affirm.

Estoppel by acquiescence occurs when "a person knows or ought to know that she is entitled to enforce her right or to impeach a transaction and neglects to do so for such a time as would imply that she intended to waive or abandon her right." *Davidson v. Van Lengen*, 266 N.W.2d 436, 438 (Iowa 1978). Similarly, but not identically, "[l]aches is an equitable doctrine premised on unreasonable delay in asserting a right, which causes disadvantage or prejudice to another." *State ex rel. Holleman v. Stafford*, 584 N.W.2d 242, 245 (Iowa 1998). A party alleging

laches has the burden to prove its application by clear, convincing, and satisfactory evidence—including "a showing of substantial prejudice." *Id.* at 245–46.

We start with the laches claim and the heavy burden it imposes on the defendants. *See id.* We affirm the district court's rejection of the claim, and we independently conclude that the defendants did not meet their burden by clear, convincing, and satisfactory evidence. We find the defendants have not proven prejudice, let alone substantial prejudice, that would impair their defense of any claims at issue in this appeal or otherwise harm their interests. We also note that laches is generally unavailable for any claim brought within the statute of limitations period, though we find it unnecessary to rest our decision on this ground. *See Life Invs. Ins. Co. of Am. v. Est. of Corrado*, 838 N.W.2d 640, 645 (Iowa 2013) ("Ordinarily the doctrine of laches does not apply within the statute of limitations unless there is a showing of a special detriment to another.").

While the estoppel-by-acquiescence claim does not require the same proof of prejudice, *see Davidson*, 266 N.W.2d at 439, we find the defendants have not properly invoked this equitable doctrine either. Even without the prejudice requirement, the burden to prove estoppel is borne by the party invoking the doctrine and requires proof "by clear and convincing evidence." *ABC Disposal Sys., Inc. v. Dep't of Nat. Res.*, 681 N.W.2d 596, 606 (Iowa 2004). The defendants did not carry their burden on this claim, as the record evidence is insufficient to prove that the plaintiffs intended to waive or abandon any rights related to the claims at issue in this appeal. To the contrary, the record shows affirmative investigation and other acts that tend to show objection to Keith's and Kurt's misconduct, rather than acquiescence—particularly as relates to the

misappropriated-corn and personal-expenses claims that we find meritorious elsewhere in this opinion.

Last, having affirmed the district court's rejection of the equitable defenses based on the defendants not carrying their initial burden, we find it unnecessary to reach the plaintiffs' claim that the defendants' "misleading tactics and concealments" would independently bar the equitable doctrines. *See Holden v. Constr. Mach. Co.*, 202 N.W.2d 348, 356 (Iowa 1972) (refusing to apply "estoppel and laches upon the basis of [the defendants'] own concealments, misleading tactics and misrepresentations").

### D. Unclean Hands

The defendants also sought to invoke below, and reiterate on appeal, a claim that the plaintiffs' "unclean hands" barred the suit outright. We affirm the district court's rejection of this claim.

This doctrine, sometimes referred to as the "clean hands" doctrine, "is not a favored doctrine of the courts and should not be invoked when the only loser would be the public." *Cedar Mem'l Park Cemetery Ass'n v. Pers. Assocs., Inc.*, 178 N.W.2d 343, 353 (Iowa 1970). When properly invoked, the unclean-hands doctrine requires proof that the plaintiff "dirtied [his hands] in acquiring the rights he now asserts." *Anita Valley, Inc. v. Bingley*, 279 N.W.2d 37, 41 (Iowa 1979) (citation omitted). The doctrine exists "to protect the integrity of the court where granting affirmative equitable relief would run contrary to public policy or lend the court's aid to fraudulent, illegal or unconscionable conduct." *Myers v. Smith*, 208 N.W.2d 919, 921 (Iowa 1973).

As a threshold matter, we note the plaintiffs are likely correct in their claim that the unclean-hands doctrine applies only to equitable claims, rather than law claims grounded in statute for damages. *See Opperman v. M. & I. Dehy, Inc.*, 644 N.W.2d 1, 6 (Iowa 2002) (noting the doctrine's application to "granting affirmative equitable relief"); *In re Est. of Herm*, 284 N.W.2d 191, 196–97 (Iowa 1979) (similar). We elect to address the merits of the defendants' argument, rather than parse out its application to different aspects of the suit.

On the merits, we reject application of the unclean-hands doctrine to Brian and Gregg. While the record includes some evidence of less-than-ideal business practices by the two during their own involvement with HFI preceding this lawsuit, we agree with the district court that this conduct was generally not during the same time period as the claims giving rise to the lawsuit (some was more than thirty years prior) and that the claims (even if proven) fall short of the misconduct necessary to invoke the doctrine. We also independently conclude that, even if we were more troubled by the plaintiffs' conduct, and even if it were more contemporaneous, the rights the plaintiffs seek to vindicate in this suit were not obtained through the alleged misconduct. In other words, no hands were "dirtied . . . in acquiring the rights [the plaintiff] now asserts," which bars application of the doctrine. *See Anita Valley*, 279 N.W.2d at 41. Finally, we are not persuaded by the defendants' reliance on *Tope ex rel. Peripheral Solutions, Inc. v. Greiner*, No. 15-1571, 2017 WL 6033871, at *4 (Iowa Ct. App. Dec. 6, 2017). There, the nominal plaintiff stole from the corporation, unlawfully converted some $40,000 in assets to his personal use, and forwarded mail to a location inaccessible to the business and in hinderance of the corporate interests. *Tope*, 2017 WL 6033871,

at *4.  The record does not contain evidence of comparable conduct by these plaintiffs, and *Tope* does not undermine the district court's ruling.

### IV. Plaintiffs' Claims

Having affirmed rejection of all preliminary defenses put forward by the defendants, we move to the plaintiffs' claims.  They assert (1) breach of fiduciary duty, (2) fraud, (3) appointment of a custodian for HFI, and (4) removal of Keith as trustee of the Trust.  As discussed below, we affirm the district court in part on these issues, reverse in part, and remand for further proceedings consistent with our opinion, including a determination of damages and a ruling on indemnification.

#### A.  Breach of Fiduciary Duties

By statute, corporate officers and directors have a duty of care, which imposes "the duty to act in conformity with . . . the care that a person in a like position would reasonably exercise under similar circumstances."  Iowa Code § 490.842(1)(b).  Officers and directors also have a duty of loyalty, which imposes the duty to act "[i]n good faith" and "[i]n a manner [the officer or director] reasonably believes to be in the best interests of the corporation."  Iowa Code §§ 490.830(1); 490.842(1).

Most analysis of corporate decision making is guided by the business-judgment rule.  "The 'heart of the business judgment rule' is 'judicial deference to business decisions by corporate directors.'"  *Oberbillig v. W. Grand Towers Condo. Ass'n*, 807 N.W.2d 143, 154 (Iowa 2011) (citation omitted).  However, "the business judgment rule governs only where a director is shown not to have a self interest in the transaction at issue."  *Cookies Food Prods., Inc., by Rowedder v. Lakes Warehouse Distrib., Inc.*, 430 N.W.2d 447, 453 (Iowa 1988).

The law affords special regulation to self-dealing and transactions that involve a conflict of interest. Historically, the Iowa Supreme Court required "directors who engage in self-dealing to establish the additional element that they have acted in good faith, honesty, and fairness," in addition to the informed consent of shareholders or disinterested directors.[2] *Id.* The modern statute appears to make the requirement disjunctive. *See* Iowa Code § 490.861(2). Because the defendants did not plead any affirmative defense under section 490.861(2)(a) or (b), any defense of a self-dealing claim requires the director or officer to affirmatively prove that "[t]he transaction, judged according to the circumstances at the relevant time, is established to have been fair to the corporation." Iowa Code § 490.861(2)(c). "Fair to the corporation" means

> that the transaction as a whole was beneficial to the corporation, taking into appropriate account whether it was all of the following:
>> a. Fair in terms of the director's dealings with the corporation.
>> b. Comparable to what might have been obtainable in an arm's length transaction, given the consideration paid or received by the corporation.

Iowa Code § 490.860(3).

The law also prohibits application of the business judgment rule when a director lacks

> objectivity due to the director's familial, financial, or business relationship with, or a lack of independence due to the director's domination or control by, another person having a material interest

---

[2] We are mindful that the General Assembly has adopted statutory amendments since *Cookies*, but we agree with the commentary that *Cookies* is still largely good law and the modern statute should be interpreted similarly or identically. *See* Matthew Doré, *Iowa Practice Series: Business Organizations* § 28:11 (West Oct. 2022 update) [hereinafter *Iowa Practice Series*]. In any event, no party urges that the relevant principles have changed since *Cookies.*

in the challenged conduct, which also meets both of the following criteria:

(a) Which relationship or which domination or control could reasonably be expected to have affected the director's judgment respecting the challenged conduct in a manner adverse to the corporation.

(b) After a reasonable expectation to such effect has been established, the director shall not have established that the challenged conduct was reasonably believed by the director to be in the best interests of the corporation.

Iowa Code § 490.831(1)(b)(3). As a commentator explains,

Courts . . . refuse to apply the business judgment rule where the director's conduct advances the director's own self-interest or the interests of any party *other than* the corporation. Such situations involve a potential violation of the director's duty of loyalty, so that review of the director's conduct under deferential business judgment rule standards is inappropriate.

*Iowa Practice Series* § 28:6 (internal footnote omitted) (also collecting cases).

With this backdrop, we review the district court's analysis of the plaintiffs' numerous claims of misconduct by the defendants.

### 1. Keith Engaged in Self-Dealing Concerning Personal Expenses and Double-Dipping Mileage Reimbursements

The plaintiffs contend that Keith engaged in self-dealing by paying personal expenses with corporate assets. The undisputed record evidence is that Keith and his wife paid nearly $200,000 in personal expenses from the corporate checking account without reimbursing the company and without documented authorization. The record discloses no legitimate business purpose for these expenses. Despite these facts, the district court found that Keith did not engage in self-dealing.

We discern two errors in the district court's ruling. First, because Keith engaged in self-dealing, the district court erred in assigning the burden regarding fairness to the plaintiffs rather than Keith. *See Cookies*, 430 N.W.2d at 453.

Second, the district court erred in finding that Keith's conduct was excused because Keith's self-dealing reflected "consistent practices of all Hora family members who were employed by and/or involved in the operation of Hora Farms over the years." While it may be true that other family members also behaved poorly, a breach-of-fiduciary-duty claim focuses on the action of the fiduciary. *See* Iowa Code § 490.842; *Cookies*, 430 N.W.2d 453–54. If anything, evidence that others also engaged in misconduct tends to support the plaintiffs' claims that Keith breached fiduciary duties by mismanaging HFI.

Because our review is de novo, we resolve the merits of this claim. We find Keith engaged in self-dealing and that these transactions are not shielded by the business-judgment rule. *See* Iowa Code § 490.860(3). We also find that Keith did not carry his burden to prove that this transaction was fair to the corporation and comparable to an arms-length transaction. While there is some record evidence suggesting that the total compensation Keith received could have been appropriate, an arms-length transaction would not include athletic tickets and personal shopping paid for with crop and infrastructure accounts or the double-dipping vehicle reimbursements. We also find independent harm to the corporation through the false or incomplete business tax returns and other records filed under Keith's management, as the records failed to adequately document or authorize payment of the personal expenses as compensation, which impacted available deductions and tax owed by HFI and exposed the corporation to legal liability.

We reverse the district court on this personal-expenses self-dealing claim, and we remand for the district court to enter judgment in favor of the plaintiffs and determine damages.

### 2. Keith Allowed Kurt to Misappropriate HFI Corn

The plaintiffs also contend that Keith breached his duty because he knew Kurt was feeding HFI corn to Kurt's swine and relatedly knew that HFI was not selling a substantial portion of the produced corn. The district court found that this conduct, as it relates to Keith, did not involve self-dealing. We disagree. The beneficiary of Keith failing to monitor the corn taken by Kurt was Kurt, who is Keith's son. We have little trouble concluding that this qualifies as a self-dealing or conflicted transaction. *See* Iowa Code §§ 490.860(2)(c) (regulating transactions when "the director knew that a related person was a party or had a material financial interest"), (5)(b) (defining "related person" to include "[a] child"); 490.831(1)(b)(3) (noting the lack of protection for directors who lack objectivity due to familial relationships).

Again, because our review is de novo, we now determine whether Keith met his burden to affirmatively prove fairness to the corporation. *See* Iowa Code § 490.860(3). We find that Keith has not carried his burden. At core, what Keith enabled was civil conversion or criminal theft of HFI corn by his son Kurt. While perhaps there is some debate as to the extent Keith knew about the conversion or theft, there is no question he knew it was happening. Keith's own words from the 2015 message to his family are damning, given his admission that allowing Kurt to convert or steal a large quantity of corn reflected on "terrible" management and weighed in favor of seeking "outside help." So too for Keith's moment of honesty

in disclosing that Kurt had "too good of a deal" at the expense of the company, which was consistent with HFI's expert describing the deal as "too sweet." Yet Keith continued to engage in his own self-dealing, enabled Kurt to do the same, and did not ask any disinterested party to review the arrangements.

We find the conduct related to misappropriated corn was not fair to the corporation and was not the equivalent of an arms-length transaction. In addition, we find this breach harmed the corporation not only through monetary loss, but also due to its broader impact on HFI's financials and legal liabilities: because the payment-by-commodity arrangement (if that is truly what occurred) was not properly reported, HFI was unable to take advantage of all relevant tax deductions, failed to pay applicable employment taxes, and may now face significant tax difficulties (if not severe liability and penalties). *Cf. Seraph Garrison, LLC ex rel. Garrison Enters., Inc. v. Garrison*, 787 S.E.2d 398, 406 (N.C. Ct. App. 2016) (finding an officer breached his fiduciary duty through "indifference to the payroll tax," which "presented the corporation with a myriad of legal problems"). We also find harm to HFI because the abject lack of documentation (no W-2s, 1099s, or other papers) for the bushels misappropriated by Kurt may lead to criminal liability for aiding and abetting Kurt in the commission of state and federal tax fraud or evasion. Finally, we find harm to HFI in its lending process because, as the certified fraud examiner explained, Keith allowing or facilitating the misappropriation of corn resulted in HFI providing "materially incomplete" records to its lenders, which likely impacted financial decision making or loan availability.

We reverse the district court on this self-dealing claim, and we remand for the district court to enter judgment in favor of the plaintiffs and determine damages.

We do not opine as to whether damages on this count are joint and several with Kurt or any other defendant.

### 3. Other Claims Keith Breached Duties

The plaintiffs below and on appeal also make a variety of other allegations that Keith breached his duties. To summarize, the plaintiffs claim Keith essentially diminished the value of shares in the corporation through poor record-keeping and bad management. Keith disputes error preservation, but we bypass the error-preservation concern given our resolution of the issue on the merits. *See State v. Taylor*, 596 N.W.2d 55, 56 (Iowa 1999) (bypassing error-preservation concern and proceeding to the merits).

The remaining allegations (other than the personal-expenses and misappropriated-corn claims) do not involve self-dealing or unjust enrichment of Keith or his immediate family members—at least not to the same extent as the personal-expenses and misappropriated-corn claims. We find the remainder of claims against Keith are either shielded by the business-judgment rule or are not supported by sufficient record evidence that would allow us to find bad faith, dishonesty, intention to harm, or unfairness to the corporate interest. We therefore affirm the district court's finding that the additional allegations do not warrant relief.

### 4. Kurt Misappropriated Corn

The district court did not address any alleged breaches of duty by Kurt, reasoning in a footnote that claims of breach and self-dealing were limited to corporate directors or officers. Kurt's appellate brief defends the suit on the merits, rather than by relying on the footnote. On de novo review, we find the district court erred in not analyzing whether Kurt breached the duties he owed to HFI.

At minimum, Kurt owed HFI the common law duty of loyalty all agents owe to a principal. *E.g.*, *Condon Auto Sales & Serv., Inc. v. Crick*, 604 N.W.2d 587, 598–99 (Iowa 1999). Kurt conceded this in his pleadings below and at oral argument, and his trusted position as operations manager of HFI justifies the imposition of fiduciary duties. *See id.* at 599 (recognizing fiduciary duties arise when an employee or agent has "greater authority to act for the principal"). It is well-established that an agent or employee breaches this duty through misappropriation of the employer's property. *See id.* at 600.

On this issue, we note the debate between the parties about who bears the burden. We ultimately find it unnecessary to resolve this question, as the evidence convinces us the plaintiffs proved breach. We find Kurt's repeat misappropriation of HFI corn for his personal use without reimbursement (which could likely be termed civil conversion or criminal theft) breached his duty. This misappropriation was not a mere accounting error but a deliberate and repeat series of choices that involved taking the corn, making false estimates of the amount taken, and inaccurately recording the taking to such a degree that precise accounting was made difficult or nearly impossible. We also reject Kurt's claim that the corn was permissible compensation, as Kurt never claimed it as income on his tax filings and HFI never reported the transactions in its filings. Last, we observe that Kurt's shifting stories (all of which conflict, to varying degrees, with more credible evidence) provide substantive proof of his culpability. *Cf. State v. Cox*, 500 N.W.2d 23, 25 (Iowa 1993) ("A false story told by a defendant to explain or deny a material fact against him is by itself an indication of guilt and the false story is relevant to show that the defendant fabricated evidence to aid his defense.").

We reverse the portion of the district court's order finding Kurt did not breach a duty, direct the district court to enter judgment for the plaintiffs on this claim, and remand for the district court to determine damages. We again decline to opine on whether these damages are joint and several with Keith or any other defendant.

### 5. Other Alleged Breaches of Duty by Kurt

The plaintiffs also make a variety of other claims of misconduct against Kurt, alleging improper payments to HK Farms for crop inputs and overcharging HFI for labor. We find that the district court should have addressed these claims, based on our conclusion regarding the duty Kurt owed to HFI farms. However, although we are hindered by the lack of fact-finding on this claim, we are convinced on de novo review that the plaintiffs did not carry their burden. Our review has been informed, but not bound by, the district court's conclusion that the plaintiffs' expert testimony (the sole basis of these claims) was "less credible than other testimony in the case."

As to the crop inputs, we find the deeply conflicting evidence in the record is not sufficient for the plaintiffs to prove by a preponderance of evidence that any overpayment was sufficient to violate the agent–principal duty Kurt owed to HFI. Unlike the misappropriated-corn claim, Kurt has plausible explanations and did not engage in deceptive conduct regarding the crop inputs.

As to the labor billing, we find Kurt's record-keeping was sloppy and incomplete, but did not rise to the level of violating a duty to HFI. While we are hesitant to reward Kurt's bad record-keeping by finding his poor accounting prevented the plaintiffs from meeting their burden, we are persuaded that we must do so here because these records were essentially the sole basis for the expert's

conclusions regarding labor billing. *Cf. N. Skunk River Greenbelt Ass'n, Inc. v. Allen*, No. 18-0842, 2019 WL 6358298, at *7 (Iowa Ct. App. Nov. 27, 2019) (finding plaintiffs failed to carry burden in part due to "abysmal" recordkeeping and financial books that were a "nightmare"). Like the crop-inputs claim, Kurt has plausible explanations, and this claim also lacks the deceptive conduct that convinces us Kurt breached a duty with regard to the misappropriated corn.

We deny the plaintiffs' claims with regard to any additional misconduct committed by Kurt, though we reiterate our condemnation of both his conduct and poor record-keeping.

### B. Fraud

Although there is some overlap in the claims of fraud and breach of fiduciary duty, the elements are different enough that outcomes may be different in litigation—as is the case here. To the extent the plaintiffs independently pursue a fraud theory, we agree with the district court that Keith's and Kurt's conduct, while dishonest and contrary to HFI's interests, does not rise to the level of fraud, fraudulent concealment, or fraudulent misrepresentation. *See Phoenix v. Stevens*, 127 N.W.2d 640, 642 (Iowa 1964) (summarizing the specific elements necessary to demonstrate actionable fraud). We are persuaded of this in part because the corporate records, while sloppy, contained sufficient information to allow this derivative suit to go forward and provided the basis for us to grant relief on at least some of the relevant claims. We recognize more or better claims may have been possible with better record-keeping, but the burden for fraud is high and must be borne by the plaintiffs. *See id.* We therefore affirm the district court on the fraud analysis.

### C. Custodian and Removal of a Trustee

In Count III of their petition, the plaintiffs requested appointment of an independent custodian due to the claimed egregiousness of the defendants' violations. Because we have reversed and vacated three underlying breach-of-duty claims that impacted the district court's analysis of this issue, we vacate and remand for the district court to decide the question with the correct legal footing on the underlying claims.

We order the same remedy for the claim made in Count 4 of the petition, concerning the trust. This claim should also be decided anew on remand with the benefit of our opinion.

We note that, given the equitable nature of the remedies, the district court may consider whether any further deficiencies have been remedied or discovered in the course of litigation. As our supreme court has said, in crafting an equitable remedy, the district court "has considerable flexibility in resolving the dispute." *See Baur v. Baur Farms*, Inc., 832 N.W.2d 663, 677 (Iowa 2013).

### D. Heather and HK Farms

The plaintiffs on appeal challenge the district court's findings that Heather and HK Farms also had liability for breach of fiduciary duty or fraud. Here, we agree with the district court that the plaintiffs did not carry their burden to prove that Heather or HK Farms facilitated the conduct at issue or acted as co-conspirators. The best evidence the plaintiffs point to is Heather's signature on tax forms, but there is little or no credible evidence she knew of the fiduciary breaches when signing the documents. We affirm the district court's conclusion that neither Heather or HK Farms have any liability in this action.

### E. Fees, Costs, and Indemnification

The district court determined that the plaintiffs raised sufficient concerns that an award of fees and costs to the defendants was not appropriate. *See* Iowa Code § 490.746 (allowing the district court to award a party's expenses incurred in a derivative suit). We agree. *See Vaughan v. Must, Inc.*, 542 N.W.2d 533, 540 (Iowa 1996) (where an award of attorney fees is authorized by statute, we review such a decision for abuse of discretion). However, because we have reversed some (but not all) of the claims decided by the district court, we direct that the district court can revisit the question of the plaintiffs' trial fees and costs if our opinion would have affected its analysis in the first instance.

The plaintiffs and defendants each seek appellate attorney fees and costs. *See Bankers Tr. Co. v. Woltz*, 326 N.W.2d 274, 278 (Iowa 1982) (holding a statute allowing an award of attorney fees includes an award of appellate attorney fees). When available, appellate attorney fees are a matter of this court's discretion. *See Christy v. Lenz*, 878 N.W.2d 461, 469 (Iowa Ct. App. 2016). Both parties have prevailed on some issues and been defeated on others. We deny the request for attorney fees on appeal and direct that the parties pay their own costs. We also affirmatively reject the defendants' claim that the plaintiffs commenced the suit for improper purposes. And we note that, although we have affirmed that neither Heather or HK Farms have liability, the questions presented by the suit and addressed in the brief jointly filed by Kurt, Heather, and HK Farms are sufficiently grounded in fact that we find an award of fees to any individual entity who shared in the briefing is not appropriate.

Finally, the plaintiffs contest whether Keith was properly indemnified for his legal fees. By statute, corporate officers are indemnified in suits brought when the director "was wholly successful, on the merits or otherwise." Iowa Code § 490.852. This provision is intended to mandate indemnification when "the proceeding is disposed of on a basis which does not involve a finding of liability." *Allen*, 2019 6358298, at *6 (quoting *Iowa Practice Series* § 28:16). Regardless of the statute, articles of incorporation may restrict indemnification. *See* Iowa Code § 490.858.

Article III, section 14 of HFI's Articles of Incorporation provides that indemnification is not available if the director or officer has been found "liable for negligence or misconduct in the performance of duty." The district court did not address this issue, presumably because it found no breach of duty. Because we found breaches of duty and reversed on the personal-expenses and misappropriated-corn issues related to Keith, we direct the district court to decide indemnification on remand. We find no basis for permissive indemnification under section 490.851, given the evidence and arguments made below. If the district court finds that Keith engaged in "negligence or misconduct in the performance of duty" as those terms are used in Article III, section 14, the district court shall order Keith to repay HFI the sum of any erroneous indemnification and make all necessary fact-findings to effectuate such an order.

### F. Disposition

As to Keith, we reverse the district court on the personal-expenses and misappropriated-corn claims, and we remand for the district court to enter judgment against Keith and determine damages. The district court must also

determine the applicability of the indemnification clause and order repayment to HFI if appropriate.

As to Kurt, we reverse the district court on the misappropriated-corn claim and direct the district court to determine damages.

As to the appointment of a custodian and removal of the trustee, we vacate and remand for the district court to determine these issues in light of our ruling on the breach-of-duty claims.

We affirm on all other grounds presented by the parties, whether addressed in this opinion explicitly or implicitly. The parties shall pay their own costs on appeal.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED WITH DIRECTIONS.**